## Southern Bell Telephone & Telegraph Co. v. City of Louisville.

(Decided June 20, 1936.)

E. D. SMITH, JOHN T. GOREE and TRABUE, DOOLAN, HELM & HELM for appellant.

MARK BEAUCHAMP, GEORGE SLAFF and SAMUEL SLAFF for appellee.

OPINION BY JUDGE REES—Overruling motion to dissolve temporary injunction.

This case is before me on a motion made by the defendant, city of Louisville, to dissolve a temporary injunction granted by the circuit court enjoining the city from enforcing an ordinance which provides for a reduction of plaintiff's rates for local exchange telephone service within the city of Louisville.

In its petition, the plaintiff alleged that the ordi-

nance was void (1) because the city is without power to regulate or change the rates of the telephone company; and (2) because the rates prescribed by the ordinance are confiscatory and therefore constitute a denial of due process. The chancellor who heard the motion for a temporary injunction was of the opinion that the ordinance was void because the city had no right to fix maximum telephone rates to be charged by the plaintiff, and he overruled defendant's demurrer to the petition and granted the injunction without considering the reasonableness of the rates prescribed by the ordinance.

As I view the case, a correct decision of the question presented hinges upon the effect to be given to the Public Service Commission Act of 1934 as it relates to the right, if any, which the city of Louisville theretofore had to regulate plaintiff's telephone rates. The General Assembly of the commonwealth of Kentucky, at its regular 1934 session, passed a comprehensive act providing for the regulation and control of public utilities within the commonwealth, and creating a Public Service Commission to administer it. Acts 1934, c. 145. The commission was given jurisdiction over certain utilities enumerated in the act, including telephone and telegraph companies, and was empowered to fix just and reasonable rates after a hearing upon reasonable notice, its findings to be subject to judicial review. Subsection (n) of section 4 of the act empowers the commission, after a hearing has been had in the manner prescribed in the act, "to enforce, originate, establish, change and promulgate any rate, rates, joint rates, charges, tolls, schedules or service standards of any utility, subject to the provisions of this act, that are now fixed or that may in the future be fixed, by any contract, franchise or otherwise, between any municipality and any such utility, and all rights, privileges and obligations arising out of any such contracts and agreements regulating any such rates, charges, schedules or service standards, shall be subject to the jurisdiction and supervision of the commission." That it was the intention of the Legislature to clothe the Public Service Commission with complete control over rates and services of the utilities enumerated in the act is evidenced by the concluding paragraph of section 4, which reads:

"Nothing in this section or elsewhere in this act contained is intended or shall be construed to

limit or restrict the police jurisdiction, contract rights, or powers of municipalities or political subdivisions, except as to the regulation of rates and service, exclusive jurisdiction over which is lodged in the Public Service Commission.''

Every utility subject to the regulation of the commission is required to file with the commission a schedule showing all rates then being collected, and is required to adhere to such schedule until a change is authorized by the commission after a hearing as provided for in the act. The act does not contravene any of the constitutional provisions to which the defendant has directed my attention. Section 52 of the Constitution, which prohibits the Legislature from releasing or extinguishing the indebtedness or liability of any corporation or individual to any municipality, is not violated by the act, though the word ''liability'' be given a broader significance than the word ''indebtedness.'' The plaintiff is the owner of the franchise granted by the General Assembly of Kentucky to the Ohio Valley Telephone Company on April 3, 1886. In 1924 this franchise was owned by the Cumberland Telephone & Telegraph Company, and in that year a consolidation of its properties and the properties of the Louisville Telephone Company, which operated a competing telephone exchange in Louisville pursuant to a franchise granted by the city, was effected with the consent of the city in accordance with the provisions of section 201 of the Constitution. The ordinance in which the city gave its consent to the consolidation provided for certain rates to be charged by the plaintiff for a specific period, which has long since expired, and it further provided that such rates should be revised from time to time at the instance of the company or of the city. Whatever right the city may have had to fix or change the rates did not constitute a liability of the plaintiff to it within the meaning of section 52 of the Constitution. That section plainly refers to a fixed money liability and not to a contractual right to fix rates of a utility. Louisville Home Telephone Co. v. City of Louisville, 130 Ky. 611, 113 S. W. 855. Sections 163 and 164 of the Constitution have no application. Section 163 merely prohibits a telephone company from erecting its poles or other apparatus along, over, under, or across the streets, alleys, or public grounds of a city without first obtain-

ing the consent of the proper legislative body of such city. Section 164 provides that no city shall grant a franchise or privilege for a term exceeding 20 years, and requires it to receive bids therefor publicly, after due advertisement, and to award same to the highest and best bidder. It provides for restrictions on a municipality in granting a franchise or privilege, though it has been held that by implication power is conferred upon a municipality to contract with the public utility at the time the franchise is granted. The power conferred upon municipalities to enter into contracts fixing rates in the first instance for public utility service does not deprive the state of its right to exercise its police power of regulating rates. The authority to regulate rates of public utilities is primarily a legislative function of the state, and the right is essentially a police power. Home Telephone & Telegraph Co. v. Los Angeles, 211 U. S. 265, 29 S. Ct. 50, 53 L. Ed. 176; Milwaukee Electric Ry. & Light Co. v. Railroad Commission, 238 U. S. 174, 35 S. Ct. 820, 59 L. Ed. 1254. I find nothing in section 164 of the Constitution indicating that the state has been deprived of the right to exercise this power, and, that being true, a franchise granted by a municipality is granted subject to the right of the state to exercise its police power in this respect. A municipality may be granted the power to make irrevocable contracts as to rates and the exclusive power of regulation either by constitutional provision or legislative enactment, but the presumption that such a surrender of power has been made will not be indulged unless the grant is expressed in clear and unmistakable language or is necessarily implied from the powers expressly granted. Home Telephone & Telegraph Co. v. Los Angeles, 211 U. S. 265, 29 S. Ct. 50, 53 L. Ed. 176; Covington & L. Turnpike Road Co. v. Sandford, 164 U. S. 578, 17 S. Ct. 198, 41 L. Ed. 560; Sumter Gas & P. Co. v. Sumter (C. C. A.) 283 F. 931; Camden v. Arkansas Light & Power Co., 145 Ark. 205, 224 S. W. 444; Hoyne v. Chicago & O. P. Elevated R. Co., 294 Ill. 413, 128 N. E. 587; City of Washington v. Public Service Commission, 190 Ind. 105, 129 N. E. 401; City of Logansport v. Public Service Commission, 202 Ind. 523, 177 N. E. 249, 76 A. L. R. 838; Winfield v. Court of Industrial Relations, 111 Kan. 580, 207 P. 813; City of Benwood v. Public Service Com-

mission, 75 W. Va. 127, 83 S. E. 295, L. R. A. 1915C, 261; Woodburn v. Public Service Commission, 82 Or. 114, 161 P. 391, L. R. A. 1917C, 98, Ann. Cas. 1917E, 997; Sandpoint Water & Light Co. v. Sandpoint, 31 Idaho, 498, 173 P. 972, L. R. A. 1918F, 1106; Manitowac v. Manitowac & N. Traction Co., 145 Wis. 13, 129 N. W. 925, 140 Am. St. Rep. 1056; State Public Utilities Commission ex rel. v. Chicago & W. T. R. Co., 275 Ill. 555, 114 N. E. 325, Ann. Cas. 1917C, 50.

At the time the 1924 ordinance was enacted the plaintiff was not operating under a franchise granted to it by the city under sections 163 and 164 of the Constitution. The city could contract with plaintiff under its then existing franchise relative to rates. Lutes v. Fayette Home Telephone Co., 155 Ky. 555, 160 S. W. 179; Johnson County Gas Co. v. Stafford, 198 Ky. 208, 248 S. W. 515; City of Covington v. Union Light, Heat & Power Co., 243 Ky. 591, 49 S. W. (2d) 580. In giving its consent in 1924, pursuant to section 201 of the Constitution, to the consolidation of the two competing telephone companies then operating in the city, one under a franchise granted by the city and the other under a franchise granted by the Legislature in 1886, the city did not acquire any greater power to regulate rates in the future than it had theretofore. The ordinance merely included and continued this right. It was not a right derived from the Constitution, but was one which had been granted to the city by the Legislature. The amendment to section 201 of the Constitution adopted in 1917, permitting the consolidation of competing telephone companies with the consent of the Railroad Commission and of the city in which they operate, was not intended to authorize cities to attach conditions which would deprive the state of its inherent power to regulate rates.

Conceding that the ordinance of 1924 constituted a contract which was binding on the parties to the extent that it fixed specific rates for a definite period and that its obligations could not be impaired in that respect by legislative enactment, the only provisions of the ordinance involved in this proceeding are those relating to regulation of rates after the expiration of the fixed period. The power to regulate rates had been delegated to the city by the Legislature, and what it had given it could take away. The act of 1934 which created the

Public Service Commission divested the city of the power to regulate rates and reposed that power in the commission.

I am unable to concur in plaintiff's view that section 199 of the Constitution by implication excludes telephone companies from legislative control. As heretofore stated, the presumption that the state has surrendered its power of regulation by a constitutional provision will not be indulged unless such intention is clearly expressed in the instrument or is necessarily implied. Section 6 of the 1934 act prescribed the procedure to be followed when a change in rates is sought, and this procedure must be followed by municipalities as well as others who are permitted by the act to file complaints.

All members of the court, except Chief Justice Clay, sat with me on the hearing of this motion, and all concur in the view that the motion to dissolve the temporary injunction should be overruled.

It is so ordered this June 20, 1936.