# Peoples Gas Co. of Kentucky et al. v. City of Barbourville et al.

June 19, 1942.

E. C. O'Rear and Allen Prewitt for Peoples Gas Co. of Kentucky.

Hubert Meredith, Attorney General, and J. W. Jones, Assistant Attorney General, for Public Service Commission.

J. Milton Luker for appellees.

Charles W. Milner and B. Hudson Milner, Amici Curiae.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This case has been thoroughly baptised with briefs filed by respective counsel for each side and also supplemented by amici curiae briefs filed in behalf of appellants. Four or five of the briefs on behalf of appellants are printed and the total number filed in behalf of all parties to the litigation is twelve, which is composed of originals, responses, replies, rejoinders, sur-rejoinders and supplemental arguments. Many fine-spun theories, as well as doubtful logic, is indulged in. As we construe the arguments presented in behalf of appellants, some of them appear to miss the mark and indulge in most forceful and vigorous contention as to the law applicable to a situation entirely different from the prevailing one at the time the petition was filed. We do not intend by what we have said to imply any criticism of counsel, or to condemn their outlined course in presenting the case to this court, since the line separating the actual case presented by the pleading, and the one most strongly argued in briefs, is exceedingly narrow, and the language of the applicable statute involved( our Public Service Commission Statute which was enacted in 1934 and now embodied in Chapter 104a, Sections 3952-1 et. seq. of Baldwin's 1936 Revision of Carroll's Kentucky Statutes), is also to some extent at least, confusing. Incidentally, constitutional questions are raised in the briefs and the argument is made on behalf of appellees that the con-

struction of the statute—as urged by appellants' counsel and others briefing the case in its behalf—is necessarily unconstitutional. However, we upheld its constitutionality insofar as it relates to the jurisdiction and authority of the Commission to adjust disputes and controversies with reference to rates that a going utility should exact and receive, under then prevailing franchise contracts, in the case of Southern Bell Telephone and Telegraph Company v. City of Louisville, 265 Ky. 286, 96 S. W. (2d) 695.

The correctness of the conclusions reached in that case on the only question there involved is not attacked herein, nor do we now intimate an opinion to the contrary, but will, throughout this opinion, accept as a fact the constitutionality of the statute. But the question herein is distinctly one (a) as to when the jurisdiction, given to the Commission by the statute, attaches, and (b) the extent of that jurisdiction when it does attach. Having said this much we will now direct attention to the exact case we have for determination.

The plaintiff and appellant, Peoples Gas Company of Kentucky, possessed a franchise, created and sold to it by the city of Barbourville, for the purpose of operating a gas plant within the corporate limits of the city for the benefit of it and its inhabitants. The franchise so held by defendant expired by its terms on August 10, 1941, and pursuant to the provisions of Section 2741m-1 it served notice on the city that it desired to continue the operation of a gas plant in the city after the expiration of its then franchise. Pursuant thereto it requested the city to create and offer for sale a new franchise to commence at the time of the expiration of its old one. Prior to the making of that request it had obtained from the Public Service Commission a certificate of necessity, etc., as required by that act, qualifying it to bid for any new franchise that the city might offer pursuant to its request; and it also had previously prepared the ordinance creating the succeeding franchise which it requested the city to enact. That ordinance contained no reference to rates, no specific reference to service, or facilities, or character of plant; but only referred to such matters in general terms, nor did the tendered ordinance make any provision whatever for the giving of security for the faithful performance of any obligations imposed upon the successful bidder at the sale to be made of the new fran-

chise. In effect, it was simply a granting of the privilege to operate such a plant within the corporate limits of the city, and to render the service contracted for in a manner satisfactory to the city and to appellant's customers.

One of the specifications insisted upon by the city was a requirement in the franchise ordinance that the leading pipe line, from which radiated other lines by which the product could be distributed throughout the city under the old franchise, was in the shape of the capital letter "U" which produced two dead ends, and the city insisted that those ends should be connected so as to make a continuous basic pipe line that would equalize the pressure from which distributing lines obtained their supply of the commodity, and thereby to better guarantee equality of pressure throughout the city. The city also insisted on a stipulation that a reasonable security should be furnished by the successful bidder for the faithful performance of the obligations of the franchise, which as inserted in its franchise ordinance, was not unreasonable or impossible of performance. It also insisted that the successful bidder be required to maintain an office and headquarters within the city, which defendant had not theretofore done. Likewise, it insisted on the insertion of specified rates for the beginning of operations under the new franchise.

There was thus created an irreconcilable conflict between the ordinance submitted by plaintiff and the one insisted upon by the city, resulting in its rejection of plaintiffs' submitted ordinance and the enactment of one containing the stipulations referred to. At that juncture this declaratory judgment action was filed by plaintiff against defendant city, its mayor, and the members of its Board of Aldermen, in which a determination of the law applicable to the facts was prayed for; also a prayer for an injunction to prevent the city from selling the franchise created by its own ordinance which it had enacted, was made. The trial court denied the injunction and dismissed plaintiffs' petition, from which this appeal is prosecuted.

Appellant in its original brief takes the broad position, with reference to Section 164 of our Constitution, that "Except for limiting the term, it (the section) merely makes the city a public auctioneer of a right-of-way. It does not deprive the legislature of the power

itself to 'write the ticket,' or otherwise provide for writing it, of the Public Service performed partly through the incidental use of the right-of-way,'' and ''So far as rates or service, are concerned, the city would be but the public auctioneer. The Commission would be the architect of those specifications,'' and which contentions it will be observed are not sought to be applied solely to franchises already acquired—whether operations have begun under them or not—but likewise prevail as to the original creation of the franchise by the municipality under which the service contracted for might be begun and were commenced. As to what power or authority the Public Service Commission might possess with reference to rates and services as applicable to the situation of the parties following the acquisition of the franchise at public sale pursuant to the provisions of Section 164 of the Constitution, we are not concerned for the manifest reason we have no such case, since the only one, we repeat, that is presented by the pleadings concerns the right of the municipality to first frame and sell the particular franchise, on terms that it may provide, for the beginning of operations thereunder by the successful bidder, and which until then no obligations are assumed or entered into by the parties. Therefore, the sole and specific question for determination is, whether or not the statute confers upon the Commission and takes away from the municipality the right to create a utility franchise to be operated within its borders, or did it leave that right, as it had been for centuries past, with the municipality? The appellants' position is, that the statute did more than vest the Commission with only regulatory powers of franchises already created, but that it also made the Commission the creator of a franchise in the original instance, and which position is combatted by the appellees.

The argument of various counsel for appellants is directed mostly towards combatting what they insist is the contention of defendants, and which they say is, that the terms embodied in the franchise ordinance are irrevocable and not subject to change or alteration thereafter through the exercise of any police power by the legislature or through any agency it might create for that purpose. But, as we understand the position of counsel for defendants, they make no such broad contention. On the contrary, they meekly submit to the interpretation

of our Public Service Statutes as made in the case of Southern Bell Telephone and Telegraph Company, supra, and in the later one of Smith v. Southern Bell Tel. & Tel. Co., 268 Ky. 421, 104 S. W. (2d) 961. They do insist, however, that the applicable section of the statute creating our Public Service Commission (Section 3952-27 of our Statutes supra) does not delegate to the Commission authority, or confer upon it the exclusive jurisdiction to control and take away from the city the right to provide for service, as well as rates, upon the launching, or the embarkment upon the installation for future operations of the particular utility, howsoever much, or to whatever extent may be the authority conferred upon the Commission—in the exercise of its regulatory power—to change or alter such stipulations after such launching has taken place.

The section of the statutes referred to (3952-27) purports to define the authority that the Commission may exercise, and the editor of the statutes (an ex-judge of this Court) heads it this wise: ''Authority of the commission to change contract rates.'' That heading is, of course, no part of the statute, but it embodies a sort of epitome of the meaning of the section as drawn by the industrious and highly qualified ex-judge. The text of the section says: ''The commission shall have power, under the provisions of this act, to enforce, originate, establish, change and promulgate any rate, rates, joint rates, charges, tolls, schedules or service standards of any utility, subject to the provisions of this act, that are now fixed or that may in the future be fixed, by any contract, franchise or otherwise, between any municipality and any such utility, and all rights, privileges and obligations arising out of any such contracts and agreements regulating to any such rates, charges, schedules or service standards, shall be subject to the jurisdiction and supervision of the commission; provided, however, that no such rate, charge, schedule or service standard shall be changed, nor any contract or agreement affecting same shall be abrogated or changed until and after a hearing has been had before the commission in the manner prescribed in this act.

''Nothing in this section or elsewhere in this act contained is intended or shall be construed to limit or restrict the police jurisdiction, contract rights, or powers of municipalities or political subdivisions, except as

to the regulation of rates and services, exclusive jurisdiction over which is lodged in the Public Service Commission.''

It will be noticed that none of the authority therein conferred upon the Commission is to be exercised by it except ''subject to the provisions of this act.'' Furthermore, the words ''originate'' and ''establish,'' as applied to rates and ''service standards,'' necessarily refer to previous authority conferred upon the commission to take such steps on its own initiative with reference to already operating concerns. In that case the Commission would itself originate its action in exercising its authority to regulate service without beng applied to by anyone connected with the franchise contract. That interpretation is further confirmed by later provisions in the same section clearly indicating such meaning to be given to those terms, by confining the authority of the Commission over rates and service standards to those ''that are now fixed or that may in the future be fixed, by any contract, franchise or otherwise, between any municipality or any such utility,'' &c.

Again, the second independent paragraph of the section specifically prescribes that it was not the intention of the legislature, in enacting the Public Service Commission act to limit ''or restrict the police jurisdiction, contract rights, or powers of municipalities or political subdivisions, except as to the regulation of rates and service, exclusive jurisdiction of which is lodged in the Public Service Commission.'' That language is an express limitation upon the powers of the Commission, with a like preservation of the power and authority of municipalities theretofore possessed by them, from the time our state was admitted into the Union. Such power and authority was and is the right of municipalities upon installing a utility within its borders to prescribe for the character of service to be rendered by it and the rates to be charged therefor at the beginning. The statute nowhere indicates a purpose to entirely take from municipalities such authority or to diminish their power in such respects, but only to modify it by prescribing that from time to time thereafter the ''regulation'' of rates and service was conferred upon the Public Service Commission. The language itself assumes that there were already existing provided rates, facilities and terms of service to be regulated by the Com-

mission in the exercise of the jurisdiction conferred upon it by the act; but nowhere in the statute, either in the section referred to or any other part of it, is there any intimation that it was the purpose of the legislature to strip and take from the municipality, in the granting of such franchise, the power and authority to enact and prescribe beginning terms and conditions, but which nevertheless might thereafter be regulated as applicable to both *rates* and *services* performed. The service regulation of which the Commission was given jurisdiction, clearly refers to the quantity and quality of the commodity furnished as contracted for with the facilities provided, and, perhaps, if such facilities are inadequate for that purpose it might be held that the Commission would have the right to require the requisite alterations so as to produce efficient service. But such authority, if possessed by the Commission, as well as the authority to regulate rates by it, attaches only *after* the franchise has been acquired, either before operations have commenced under it, or thereafter throughout the life of the franchise.

Indeed, the brief filed on behalf of the Public Utilities Company so concludes, since counsel in referring to the section of the statute under consideration expressly states: ''As we interpret this part of the Commission act, a city is not thereby deprived of its right to contract with a utility company with respect to initial rates. As we understand the present law, a city may enter into a contract with a utility company whereby the rates to be charged by the company are fixed in the first instance, and thereafter they are subject to the exclusive regulation by the Commission. Under this interpretation of the law, the city is free to contract with respect to rates in the first instance, but is without any power or authority to regulate rates.'' In support of that conclusion the case of City of University Place v. Lincoln Gas and Electric Company, 109 Neb., 370, 191 N. W. 432, from the Supreme Court of Nebraska, is cited, in which that court pointed out the distinction between the authority of a municipality to originally contract with reference to a utility and its authority to regulate the subject matter of the contract after it was completed. There are so many cases cited in the different briefs which are supposed to be applicable and pertinent to either the main question involved—or collateral ones having a remote bearing up-

on that question—that it will be impossible to refer to or discuss them, except to say that we have failed to find in any cited case wherein the court held that a utility statute, conferring upon the Commission similar authority as does our statute, has the effect to vest in the Commission, or to take from the city, the right to prescribe for rates or service or to impose other reasonable conditions in its franchise ordinance upon its embarking upon a move to obtain the services of a particular public utility within its corporate limits. All of the opinions deal with the right of the Utility Commission to alter, charge or regulate such initiatory provisions of the matters delegated to it as changed conditions from time to time demand in justice to all parties concerned.

In addition to what we have said attention should be called to Section 2741m-1 supra, of our statutes, which is the one, as we have seen, authorizing the present holder of a particular franchise to request the creation of a new one at the expiration of the current one. That section, as last enacted by our legislature in 1936, two years after the enactment of our Public Service Commission Act, expressly says that the franchise thus demanded shall be ''on terms and conditions which shall be fair and reasonable to the municipality, to the public service corporation, and to the patrons of the corporation, and which shall specify the quality of service to be rendered.'' It would, therefore, seem that if plaintiffs' interpretation of the Public Service Commission Act was correct then the later reenactment in the section last referred to conferred authority upon the city—in complying with the exact character of request here under consideration—the right to prescribe beginning conditions, but which, nevertheless, may be regulated thereafter by the Commission under the provisions of the act creating it. Of course, such original or initiatory provisions that might be prescribed by the city in its franchise ordinance should be reasonable, which we have declared in a number of cases, and should not be impossible of performance, nor so burdensome as to destroy the possibility of the operator of the plant to earn a reasonable profit.

Clearly, also, the last section referred to would permit the prescribing for a requisite physically constructed plant for the performance of the service contracted for, as well as guaranties that the successful bidder would perform the obligations imposed upon him, pro-

vided they are not unreasonably burdensome. No authority to regulate such imposed conditions does the Utility Commission Act confer upon the Commission it creates, since, as we have seen, its jurisdiction is exclusively confined "to the regulations of rates and service." We do not pretend and shall not undertake in this opinion to define the exact scope of the word "service" as employed in the statute, except to declare that whatever may be its total coverage, it does not embrace the taking from municipalities the power and authority to make provisions for both service and rates in its embarkation on a purpose for the installation of a particular utility, subject to the limitations which we have hereinbefore stated.

Such conclusion is also advanced, as we have seen, by counsel briefing this case for the Commission, and it was also approved by us in the case of Southern Bell Telephone and Telegraph Company v. City of Louisville, supra, 265 Ky. 286, 96 S. W. (2d) 695, 697. In interpreting the scope and effect of Section 164 of our Constitution, we said in that opinion:

"It [Section 164] provides for restrictions on a municipality in granting a franchise or privilege, though it has been held that by implication power is conferred upon a municipality to contract with the public utility at the time the franchise is granted. The power conferred upon municipalities to enter into contracts fixing rates in the first instance for public utility service does not deprive the state of its right to exercise its police power of regulating such rates [as so fixed in the first instance]. The authority to regulate rates of public utilities is primarily a legislative function of the state, and the right is essentially a police power. [Citing cases]. I find nothing in Section 164 of the Constitution indicating that the state has been deprived of the right to exercise this power, and, that being true, a franchise granted by a municipality is granted subject to the right of the state to exercise its police power in this respect. A municipality may be granted the power to make irrevocable contracts as to rates and the exclusive power of regulation either by constitutional provision or legislative enactment, but the presumption that such a surrender of power has been made will not be indulged unless the grant is expressed in clear and unmistakable lan-

guage or is necessarily implied from the powers express-ly granted.''

That language, as we construe it, possesses no dictum, since the conclusion expressed was essential to the decision of the sole question presented in that case, and it is, as we conclude, an interpretation by this court in direct conflict with that insisted on by appellants. Compare also the cases of Kentucky Utilities Company v. Board of Com'rs of City of Paris, 254 Ky. 527, 71 S. W. (2d) 1024; Thomas v. City of Horse Cave, 249 Ky. 713, 61 S. W. (2d) 601; Hatcher v. Kentucky and West Virginia Power Company, 280 Ky. 583, 133 S. W. (2d) 910, and cases referred to in those opinions, all of which sustain the excerpt inserted from the reported cases in 265 Ky. 286, 96 S. W. (2d) 695. The latter case expressly held that a municipality had the right to impose conditions, even to the extent of fixing rates, as well as providing for service in its franchise ordinance permitting the entry of a public utility within its border, but subject to the right of the state in the exercise of its police power to regulate rates and service *after* they were first fixed, or provided for by the city in its franchise contract, and which reserved power is rested upon the necessity of periodical alterations and changes in such respects in order to meet inevitable changes in conditions.

But there exists a fact, not mentioned in the Southern Bell Telephone and Telegraph case, supra, nor any other one rendered since the enactment of our Public Service Commission Act, which administers a tremendous blow to the interpretation urged upon us by counsel for appellants. That fact is that nowhere in the 1934 Public Service Commission Act is there any machinery provided, or procedure enacted, whereby a municipality may enter into the portals of the Commission and ask it to frame a franchise ordinance containing the terms and conditions upon which a proposed public utility may enter the city and commence operations. We have seen that such an interpretation would be a most revolutionary one and, therefore, the purpose of the legislature to so provide should be most clearly expressed. If it intended to do so in the 1934 Act creating our Public Service Commission it is strange that no provisions were made or procedure established whereby such a requirement might be complied with. The act does prescribe for procedures whereby disputes over rates and service may

be brought before the Commission for adjustment but such disputes concern rates and service theretofore fixed, or which might be fixed in the future. The fact that no such provision was made to put into execution the interpretation of appellants goes far toward convincing us that no such purpose was contemplated by the act. We, therefore, conclude that insofar as the trial judge held that the city had the right to pass its own ordinance, which it did do, and to sell the franchise, thereby created or terms specified in it, was correct.

However, the ordinance which the city enacted creating the new franchise plainly offended the interpretation of Section 164 of our Constitution, as interpreted by us in the case of Hamilton v. Bastin Brothers, 188 Ky. 764, 224 S. W. 430, in that it provided for a limitation period of the franchise to commence at a future date and continue for twenty years thereafter, as was also true in the Hamilton case. Counsel for the city seems to admit such fact, and he requests the court that, if it so concludes, it preserve the rights of the city to re-enact its ordinance with the pointed out defect eliminated therefrom so as to comport with the interpretation made in the Hamilton opinion. Because of this error the judgment will have to reversed, but solely for that particular reason, and with the right of the city to re-enact its ordinance correcting the indicated error.

Wherefore, the judgment is reversed, with directions to grant the injunction prayed for to the extent of prohibiting the city from selling the franchise under the invalid ordinance creating it, but reserving the right of the city to re-enact its ordinance with the pointed out invalid portion eliminated therefrom, after which it may proceed to advertise and sell the franchise as it was preparing to do when this action was filed under its original invalid ordinance.

The whole Court sitting.

Judge Cammack dissenting.

I am not in accord with the view expressed in the majority opinion as to the extent of the jurisdiction of the Public Service Commission over the rates and services of private utilities. Regulation of private utilities on the part of the Commission is an exercise of the State's police power. Rates cover all charges for a utility service and services include the commodity in-

volved as well as the facilities used for its delivery to consumers. The Commission Act makes no pretense of attempting to vest in the Commission the right of cities under Section 164 of the Constitution to grant franchises. The question of whether a city will grant a public utility a franchise is entirely up to it, and under Section 163 of the Constitution the city has a right to say when and how a utility shall occupy its streets. But, as said in the case of Kentucky Utilities Co. v. Board of Commissioners of City of Paris, 254 Ky. 527, 71 S. W. (2d) 1024, once a city grants a franchise, as has been done in the case at bar, the utility must be given an opportunity on the expiration of its franchise to procure a new and similar one on terms fair to the city, the utility and to the consuming public, by a bid which is highest and best in open competition. I do not think it can be contended seriously that the City of Barbourville is offering for sale a gas franchise similar to the one it heretofore granted the company and under which it is now operating. It is my view that once a city grants a franchise authorizing the inauguration of a public utility service under terms authorized by Section 163 of the Constitution, then the whole question of regulating the utility's rates and services comes under the jurisdiction of the Public Service Commission.