## Benzinger, Police Judge, et al. v. Union Light, Heat & Power Co.

Jan. 29, 1943.

748

Stanley Chrisman and Johnst Northcutt for appellants.

Galvin, Tracy, Crawford, Geoghegan & Levy for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Prior to the arising of the controversy resulting in this litigation, the city of Covington, Kentucky, by its legislative department, enacted an ordinance requiring certain public utilites operating within the city, employing wires in the distribution of their product, to place them under ground and to remove from the streets all poles theretofore in use and upon which their wires were strung. The plaintiff below and appellee here (Union Light, Heat and Power Company) had for sometime theretofore obtained a franchise and owned and operated an electric light system within the city, transmitting its product over wires strung on poles located within sidewalks or other portions of streets. The city served notice on plaintiff and appellee—it not having complied

with the ordinance—to remove its poles from Seventh Street between Scott and Madison Avenues, and to place its electric wires under ground as directed and required by the ordinance—which prescribed a penalty for failure to comply with its requirements, and that each day's operation without such compliance would constitute a separate offense. The city then cited plaintiff to appear before its police court wherein it was charged with having violated the ordinance; but before the day set for the trial plaintiff filed this Declaratory Judgment Action in the Kenton circuit court against the city and all of its officers having any duty to perform in the enforcement and the enactment of the ordinance. In its petition it alleged that by the enactment of what is known as the "Public Service Act" in 1934—and now embodied in chapter 104a, sections 3952-1 et seq. of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, and section 278.010 et seq. of the KRS edition—the authority of the city to make and enforce the questioned requirement was taken away from the city and exclusively lodged with the Public Service Commission created by that act.

Appellants disputed that contention and demurred to the petition which sought a permanent injunction against defendants, restraining them from prosecuting appellee for the alleged infraction of the ordinance, since its requirements, as it contended, were annulled upon the taking effect of the Public Service Commission Act and, therefore, the city had no right or authority to prosecute plaintiff under the ordinance. A temporary restraining order was issued upon the filing of the petition, followed by various steps of practice when the cause was submitted to the court on the demurrer of defendant, and the motion of plaintiff for a temporary injunction restraining defendants from prosecuting plaintiff for any alleged violations of the ordinance. The court overruled defendants' demurrer to the petition and sustained plaintiff's motion for the temporary injunction, which was followed by an answer of defendants containing a denial of all averments of the petition, except it admitted the passage of the ordinance, and the determination of defendants to prosecute plaintiff for its charged violation.

Plaintiffs demurred to the answer, which the court sustained, and upon defendants' failing to plead further the court permanently enjoined them "from enforcing

or in any manner attempting to enforce'' the ordinance in respect to the requirement referred to, and also enjoined them from prosecuting the citation of plaintiff, then pending before the city police court. Defendants were likewise enjoined from taking any steps to thereafter enforce the involved requirement. From that judgment defendants prosecute this appeal.

It will at once be seen—and it is so conceded by all parties to the litigation, as well as by the presiding judge who rendered the judgment appealed from—that the sole question for determination is: Whether the Public Service Commission Act took from the city power and authority to prescribe the involved requirement by placing it exclusively with the Public Service Commission? The court answered that question in the affirmative and we are called upon by this appeal to determine whether or not that answer was correct. All parties agree that prior to the enactment of the Public Service Commission Act the city possessed such authority and had so possessed it from time immemorial, as is pointed out in the case of Peoples Gas Company of Kentucky v. City of Barbourville, 291 Ky. 805, 165 S. W. (2d) 567, and other preceding ones rendered since the enactment of the statute.

Wrapped up in the stated question for determination is the further one—whether the legislature has the constitutional right—even if it did so prescribe in the Public Service Commission Act, to take from the city the right to prescribe as it did in the attacked ordinance for the under ground laying of wires of public utilities operating in and upon portions of its streets and ways, and to lodge that power with the Public Service Commission? The answer to that question calls for a consideration of section 163 as affected by section 164 of our Constitution. The first one referred to (163) prescribes that no public utility ''shall be permitted or authorized to construct its tracks, lay its pipes or mains, or erect its poles, posts or other apparatus along, over, under or across the streets, alleys, or public grounds of a city or town, without the consent of the proper legislative bodies or boards of such city or town being first obtained.'' That language clearly, to our minds, gives constitutional authority to municipalities to control the manner whereby a utility may occupy its public streets and other owned property with required facilities for distribution

of its product. The section by plain and indisputable inference vests municipalities with the exclusive right to say whether such transmitting facility shall be above the street or under it, or, whether the utility may erect poles or posts along the street for the stringing of necessary wires, or whether they should be put under the ground, thereby dispensing with poles in order to support them above ground. It would, therefore, appear that the municipal defendant had the constitutional right to determine whether the transmission wires involved in this case should be strung on posts set within the public streets and ways, or buried under the surface. Therefore, if the Public Service Commission Act could be construed as taking from the city such authority it would be an invasion of the city's constitutional right. Section 164 has but little, if any, bearing upon the question, nor does section 163 make any reference to rates or character of service. However, we have concluded to shoulder the task of interpreting the applicable provisions of the Public Service Commission Act, and to see whether or not it was the intention of the legislature in enacting it to take from the city the authority referred to, and to vest it exclusively in the Utility Commission, which is so contended by plaintiff.

Not only is that contention based upon counsel's interpretation of the language of the act, but it is also contended that our opinions in the cases of Southern Bell Telephone & Telegraph Company v. City of Louisville, 265 Ky. 286, 96 S. W. (2d) 695, and Smith v. Southern Bell Telephone & Telegraph Company, 268 Ky. 421, 104 S. W. (2d) 961, support counsel's contention, and which the court sustained in the judgment appealed from. An examination of the City of Louisville case (265 Ky.) reveals that the only question there involved was one relating to *rates* to which section 163 of the Constitution makes no reference whatever, nor does section 164 refer thereto. Moreover, there is nothing said in that opinion militating against the rights of a municipality with reference to utility furnishers, except as to the regulation of rates which that opinion determined was exclusively lodged with the Public Service Commission. If, therefore, the opinion could be construed as determining other questions than the one of rates, it would necessarily follow that such language, furnishing such interpretation, would be dictum.

The question involved and determined in the Smith case, supra (268 Ky.), was: Whether or not the circuit court clerk of Pike County could force the telephone company to install a telephone in his office without the payment of tolls. We held that the question there presented was one primarily relating to *service* to be rendered by the utility without the payment of tolls, or rates for the service. We held that the questions presented were lodged by the Public Service Commission Act with the utility commission; but no question was raised or presented therein with reference to the matters contained in section 163 of our Constitution. Both opinions quoted and referred to the last clause in section 3952-27₁ of Baldwin's 1936 Revision of Carroll's Kentucky Statutes (being section 278.040 of KRS), which says: "Nothing in this section or elsewhere in this act contained is intended or shall be construed to limit or restrict the police jurisdiction, contract rights, or powers of municipalities or political subdivisions, except as to the regulation of rates and service, exclusive jurisdiction over which is lodged in the Public Service Commission."

That clause clearly and unmistakably limits the jurisdiction of the Commission to those two matters. The inserted clause from the statutes also expressly says that nothing in the section of which it is a part "or elsewhere in this act contained is intended *or shall be construed* to limit or restrict the police jurisdiction, contract rights, or powers of municipalities or political subdivisions" (our emphasis) other than the two mentioned, and it was those two that our opinions referred to, considered and determined. The enactment of the inserted clause, supra, of the statute clearly manifests an intention on the part of the legislature to prescribe a rule for the interpretation of the entire act. It knew that the authority it was taking from municipalities, and exclusively conferring jurisdiction thereof with the utility commission, was more or less revolutionary and might be construed as invading contract rights of the municipality, or its police jurisdiction over all matters relating to public utilities within their corporate limits. Therefore, to forestall such an interpretation of any part of the act it was expressly stated that the intention was to confer jurisdiction only over the matter of rates

and service. The question of *rates* is not involved in this case, leaving only the question of *service* to be determined.

The first section of the Public Service Commission Act is definitive, among which are definitions of "facility" or "facilities" and a definition of "service" as employed in the act. In the latter definition it says that the word "service" is used in its broadest and most inclusive sense, including practice or requirements relating to the service, "including the voltage of electricity; the heat units and pressure of gas, the purity, pressure and quantity of water, and in general the *quality, quantity* and pressure of any commodity or product used or to be used for or in connection with the business of any utility." (Our emphasis). Our interpretation of that language is, that the legislature only intended for the word "service" to apply to and comprehend "quality" and "quantity" of the product to be served, and to that end for the word to also include and comprehend any part of the facility of the utility that bottle-necked the required service of quantity and quality; but did not transfer jurisdiction on the commission over other portions of facilities which did not obstruct, prevent or interfere with the quality and quantity of the furnished product. Therefore, when any controversy relating to quantity and quality—preferred either by the municipality against the utility, or by a customer of the latter—the commission was given exclusive jurisdiction of that question, including the further jurisdiction over facilities insofar as any part thereof might obstruct or curtail quality or quantity of the furnished product.

In so concluding we follow the Supreme Court of the United States, as expressed in a very recent opinion in the case of Terminal Railroad Association of St. Louis v. Brotherhood of Railroad Trainmen et al., 63 S. Ct. 420, 423, 87 L. Ed. —, which was rendered January 18, 1943. The question involved was an apparent conflict between a Congressional Act and one enacted by the legislature of the state of Illinois, wherein it was contended that the Federal Statute covered the whole field dealt with to the exclusion of the state statute. The Court rejected that contention, and in the course of the opinion it was said: "But we would hardly be expected to hold that the price of the federal effort to protect the peace and continuity of commerce has been to strike

down state sanitary codes, health regulations, factory inspections, and safety provisions for industry and transportation.'' In harmony therewith the Court later in the opinion said: ''We hold that the enactment by Congress of the Railway Labor Act was not a preemption of the field of regulating working conditions themselves and did not preclude the State of Illinois from making the order in question.'' So in this case we hold that in the light of the wording of the involved statute, and in view of the upsetting effect it would have on long continued exercise of authority by municipalities in promoting local self-government, the enactment of the statute under consideration was not a preemption of the field of municipal authority over its public streets, alleys and property so as to deny to it the right to choose for itself the method or manner of encumbering or placing burdens on such public owned property over which it has exclusive jurisdiction.

In the instant case it is not complained that the placing of plaintiff's wires under ground would in any manner affect the transmission of its product, either as to quality or quantity. The requirement of the ordinance is but an exercise of the city of its constitutional rights with reference to burdening its streets or public ways with the necessary facilities for furnishing utility service. We, therefore, do not agree with either the court, or counsel, in their interpretation of the Public Service Commission Act so as to confer any jurisdiction of the particular question here involved, upon the Public Service Commission. However, if we should be wrong in our interpretation of the involved statute, and the interpretation of it made by the court and counsel for plaintiff was the correct one, then such provisions of the act as deprived the city of jurisdiction and authority to regulate and prescribe for the burdening of its streets and public ways by utility operations, invades the provisions of section 163 of our Constitution, and so much of the statute as so prescribes would be unconstitutional.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside, and to sustain defendants' demurrer filed to the petition, and for other proceedings consistent with this opinion.

Whole Court sitting, except Judge Cammack, who was absent.