**SIMPSON COUNTY WATER DISTRICT, Appellant,**

v.

**CITY OF FRANKLIN, Kentucky, Appellee.**

No. 93–SC–47–DG.

Supreme Court of Kentucky.

Jan. 31, 1994.

Rehearing Denied April 21, 1994.

Charles E. English, Whayne C. Priest, Jr., D. Gaines Penn, English, Lucas, Priest & Owsley, Bowling Green, KY, for appellant.

Timothy J. Crocker, Robert D. Wilkey, Crocker & Wilkey, Franklin, for appellee.

Christina A. Heavrin, City Law Director, Joseph B. Helm, Charles S. Cassis, Brown, Todd & Heyburn, Louisville, James Park, Jr., Katherine Randall, Brown, Todd & Heyburn, Lexington, amici curiae.

REYNOLDS, Justice.

The issue for decision is whether the Public Service Commission (PSC) has exclusive jurisdiction over the regulation of utility rates and service which extends to a city contracting for the sale and supply of water to a PSC-regulated county water district.

As background:

The Simpson County Water District (District) is a statutorily created public water district operated and regulated pursuant to KRS Chapter 74 and is expressly subject to the Kentucky Public Service Commission, which is operative under KRS Chapter 278. The City of Franklin (City) has heretofore established and now operates and maintains a municipal waterworks by virtue of the provisions of KRS Chapter 96.320–96.510.

On April 5, 1967, both parties entered into and executed their first Water Purchase Agreement whereby the price for treated water to the District was at a rate of 21½ cents per 1,000 gallons per month.

Thereafter two supplemental agreements (August 26, 1982 and April 3, 1986), were executed which increased the price of water to the District to the rate of 84.78 cents per 1,000 gallons per month. Subsequently, on June 25, 1990, the City adopted an ordinance which increased the water rate to all customers and specifically increased the water rate charged the District from 84.78 cents to $1.3478 per 1,000 gallons. On May 13, 1991, the City passed a second ordinance which increased only the rate charged the District from $1.3478 to $1.68 per 1,000 gallons. The District, however, continued to pay only the 1986 rate.

The City filed this action seeking damages for delinquent payments and a declaratory judgment that the three water purchase agreements were void. The trial court dismissed the action and concluded that it lacked subject matter jurisdiction. A three-

judge panel of the Court of Appeals rendered a split decision reversing and remanding the case to Simpson Circuit Court. The majority opinion reasoned that the city was not a utility nor did its relationship acting as a supplier to a PSC-regulated utility bring it within the PSC's jurisdiction.

■ The appellee forthrightly states that cities are specifically exempted from regulation by the Public Service Commission under the definitional term of KRS 278.010(3) which provides as follows:

"Utility" means any person except a city, who owns, controls or operates or manages any facility used or to be used for or in connection with: ... (d) The diverting, developing, pumping, impounding, distributing or furnishing of water to or for the public, for compensation; ....

The City states that there are no exceptions to the exemption afforded a city under the foregoing statutory provision. However, the legislature provides a rates and service exception specifically set forth in KRS 278.-040(2), which states:

The jurisdiction of the commission shall extend to all utilities in this state. The commission shall have exclusive jurisdiction over the regulation of rates and service of utilities, but with that exception nothing in this chapter is intended to limit or restrict the police jurisdiction, contract rights or powers of cities or political subdivisions.

It is acknowledged by the parties that the PSC has only such authority that is granted to it by the legislature and it is clear that the legislature vested the PSC with exclusive control of rates and service of utilities. The legislature has conferred upon cities an exemption from the PSC's power to regulate local utilities in every area except as to rates and service.

Profoundly, reference to a "city" under the statutory scheme includes city-owned utilities. We give no validity to the argument that since the City is exempt from regulation by the PSC, KRS 278.200 should be interpreted to apply only when the regulated utility is the provider, not the recipient, of the service. Simply put, the statute makes no such distinction. The statute has but one meaning—the City waives its exemption when it contracts with a regulated utility upon the subjects of rates and service.

Effective regulation of rates and service of public utilities resulted from the Kentucky General Assembly's passage of the Public Service Commission Act of 1934. The primary issue on appeal is whether, under the act, a city waives its exemption from PSC regulation by contracting to supply a commodity to a PSC-regulated utility. The section of the original act creating the rates and service exception appeared in Carroll's Code, 1936 Revised Version, Section 3952–27 which provided as follows:

**Authority of the commission to change contract rates.**—The commission shall have power, under the provisions of this act, to enforce, originate, establish, change and promulgate any rate, rates, joint rates, charges, tolls, schedules or service standards of any utility, subject to the provisions of this act, that are now fixed or that may in the future be fixed, by any contract, franchise or otherwise, between any municipality and any such utility, and all rights, privileges and obligations arising out of any such contracts and agreements regulating any such rates, charges, schedules or service standards, shall be subject to the jurisdiction and supervision of the commission; provided, however, that no such rate, charge, schedule or service standard shall be changed, nor any contract or agreement affecting same shall be abrogated or changed until and after a hearing has been had before the commission in the manner prescribed in this act.

Nothing in this section or elsewhere in this act contained is intended or shall be construed to limit or restrict the police jurisdiction, contract rights, or powers of municipalities or political subdivisions, except as to the regulation of rates and service, exclusive jurisdiction over which is lodged in the Public Service Commission.

Thus, any contract as to rates and service arising between a city and a utility required PSC authority. As the PSC, by express language, retained exclusive jurisdiction over regulation of rates and service, this simply

created the rates and service exception which the trial court found as vesting the PSC with exclusive jurisdiction over a city's attempt to affect utility rates or service. *Benzinger v. Union Light, Heat, & Power Co.*, 293 Ky. 747, 170 S.W.2d 38 (1943), acknowledged the legislative intent of the act as to place the regulation of rates and service under the exclusive jurisdiction of the PSC. The aforementioned Carroll's Code was revised and codified in 1942. The first paragraph resultantly appears in KRS 278.200, and the second paragraph reappears as KRS 278.040(2). Irrespective of subsequent codification, the effect and meaning of the rates and service exception continues to exist without modification. Simply put, both current sections of the statute are compatible.

The second sentence of KRS 278.040(2) is the "exception" to the general rule which exempts cities from PSC regulation. It provides:

> The commission shall have *exclusive jurisdiction* over the regulation of *rates* and *service* of utilities, but with that *exception* nothing in this chapter is intended to limit or restrict the police jurisdiction, contract rights or powers of *cities* or political subdivisions. (Emphasis added).

Thus, when a city is involved, the sentence reflects unequivocally the legislature's intent that the PSC exercise exclusive jurisdiction over utility rates and service.

Significantly, this sentence or subsection (2) of KRS 278.040 was addressed in *Peoples Gas Co. of Kentucky v. City of Barbourville*, 291 Ky. 805, 165 S.W.2d 567 (1942). As the initial sentence of KRS 278.040(2) directs that PSC jurisdiction extends to all utilities, there could be no reason to provide for the "exception" for the regulation of rates and service as pronounced in the second sentence of the statute if that exception were not intended to apply to cities which are otherwise plainly exempted from PSC jurisdiction by virtue of KRS 278.010(3) which has defined "utility" as "any person except a city."

■ The rates and service exception to a city's exemption from PSC regulatory jurisdiction is not avoidable by contract because of the following provisions of KRS 278.200:

> *The commission may*, under the provisions of this chapter, originate, establish, *change*, promulgate and *enforce any rate or service standard of any utility that has been* or may be *fixed by any contract*, franchise or agreement *between the utility and any city*, and *all rights, privileges and obligations* arising out of any such *contract*, franchise or agreement, *regulating any such rate or service standard, shall be subject to the jurisdiction and supervision of the commission, but no such rate or service standard shall be changed, nor any contract*, franchise or agreement *affecting it abrogated or changed, until a hearing has been had before the commission* in the manner prescribed in this chapter. (Emphasis added).

We find that where contracts have been executed between a utility and a city, such as between the City of Franklin and Simpson County Water District, KRS 278.200 is applicable and requires that by so contracting the City relinquishes the exemption and is rendered subject to PSC rates and service regulation.

The City argues that the courts of the Commonwealth have jurisdiction to entertain the issues raised by appellee in this action. *Kentucky Utilities Co. v. Carter*, 296 Ky. 30, 176 S.W.2d 81 (1943), and *Louisville Extension Water Dist. v. Diehl Pump & Supply Co.*, Ky., 246 S.W.2d 585 (1952), are cited to demonstrate that there is no "exception to the exemption." Such authority produces scant support for such reasoning as neither case concerned a rates and service issue for the supplying of a utilitarian product. To the contrary, one action involved unsatisfactory work arising from an oral contract, and the other arose from the execution of a contract for the furnishing of materials and the repair of pumps.

■ Neither do we accede to the City's interpretation of *Southern Bell Telephone & Telegraph Co. v. City of Louisville*, 265 Ky. 286, 96 S.W.2d 695 (1936), but rather determine that there is nothing in the act intended or to be construed to limit police jurisdiction, contract rights, or powers of municipalities or political subdivisions, except as to the regulation of rates and service, exclusive jur-

isdiction over which is lodged in the Public Service Commission.

The City claims that rates charged by a municipality to its customers, including water districts, fall outside the PSC regulatory jurisdiction and offers *McClellan v. Louisville Water Co.*, Ky., 351 S.W.2d 197 (1961), in support of its argument. This case and the additional cited authority involve the water rate charged by the municipally-owned utility to nonresident customers. The City's argument is not supported by *McClellan, supra,* insofar as a municipality was not selling water to a PSC-regulated utility. At the time the *McClellan* opinion was rendered, water districts were exempt from PSC regulation. This court subsequently expressed the need for PSC regulation in cases dealing with city utilities, and the legislature, by its amendment of KRS 278.010(3), brought water districts within the PSC's jurisdiction. Additionally, the legislature enacted KRS 278.015 which, of itself, removes any doubt that water districts were subject to PSC regulation.

■ The statutory exception applicable to rates and service as provided will prohibit cities from exercising control over rates charged and the service provided to customers of local utilities. Jurisdiction to regulate such rates and service has been exclusively vested in the PSC. The record in this case discloses a doubling of the wholesale water rates charged to the District within a two-year period, with a direct impact upon the District's utility rates and service. Added to the force which the City sought to apply was a call to terminate service by declaring the parties' contract null and void. It is apparent that the City, through its enhanced water sale ordinances, did not direct the setting of any particular rate schedule, but its action profoundly and directly impacts the District's general revenue level, which is one of the first steps in rate making. The City's action is an improper engagement in rate making and strongly supports PSC jurisdiction. The statutory definition of utility is not to serve as an impenetrable shield to afford the City immunity.

The City urges that the circuit court should bear the jurisdiction of this case for no other reason than it is one of contract interpretation. Were this the sole issue, we would state that matters of contract interpretation are well within the court's expertise and not that of utility regulatory agencies. *Texas Gas Transmission Corp. v. Shell Oil Co.*, 363 U.S. 263, 80 S.Ct. 1122, 4 L.Ed.2d 1208 (1960). But, again, the issue is whether Simpson Circuit Court has jurisdiction over the matters raised in the City's complaint or whether jurisdiction was vested within the province of the PSC by the legislature and with the authority to do so flowing from the exercise of the police power of the state. *See Southern Bell, supra.*

■ The City's unilateral adoption of the two water-rate ordinances doubled the water charge and, in no uncertain terms, was an act that directly related to the rate charged by the water district. The City's declaration to hold the parties' contracts null and void constitutes a practice relating to the service of the water district. The City's analogy of comparing its sale of treated water to coal supplied to an electric utility bears little relationship to the issue herein. The manifest purpose of the Public Service Commission is to require and insure fair and uniform rates, prevent unjust discrimination, and prevent ruinous competition. *City of Olive Hill v. Public Service Commission*, 305 Ky. 249, 203 S.W.2d 68 (1947). Also, the service regulation over which the Commission was given jurisdiction refers clearly to the quantity and quality of the commodity furnished as contracted for with the facilities provided. *Peoples Gas Co. of Kentucky v. City of Barbourville, supra.*

While the city finds comfort in relying on *City of Georgetown v. Public Service Commission*, Ky., 516 S.W.2d 842 (1974), in its argument against the rates and service exception, we clearly discern that there is no existing support. The parties were engaged in a dispute of territorial jurisdiction, between a private utility and a city utility and the issue therein affected neither rates or service as it does in this case. Additionally, jurisdiction over the city was rejected because it was a "person" as defined by KRS 278.020(1). Thus, secondly, the rates and service exception had no relationship to the issue raised in *City of Georgetown, supra.*

■ The City candidly admits that the Public Service Commission has expertise in resolving disputes over rates and service but that construction of KRS 278.040(2) and KRS 278.200, as maintained by the District, creates a paradox and serves to illustrate that where no contract exists between a city and a regulated utility, the courts would be called upon to resolve rates and service disputes. However, from a practical point of view, there has always been a contract/agreement in place and in operation at the time a City supplied water to a utility. Once established by contract, such service can only be abrogated or changed after a hearing before the PSC. KRS 278.200. *Fern Lake Co. v. Public Service Commission*, Ky., 357 S.W.2d 701 (1962). The PSC acts as a quasi-judicial agency utilizing its authority to conduct hearings, render findings of fact and conclusions of law, and utilizing its expertise in the area and to the merits of rates and service issues.

■ The rates and service exception effectively insures, throughout the Commonwealth, that any water district consumer/customer that has contracted and become dependent for its supply of water from a city utility is not subject to either excessive rates or inadequate service.

The Court of Appeals' opinion is reversed and the opinion and order of Simpson Circuit Court is affirmed.

STEPHENS, C.J., and LAMBERT and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion in which LEIBSON and SPAIN, JJ., join.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the Court of Appeals correctly determined that the Simpson Circuit Court had jurisdiction over a contract dispute between the City of Franklin and the water district. The Public Service Commission has jurisdiction only over the rates and services of a "utility," publicly or privately owned, as distinguished from city-owned.

KRS 278.010(3) clearly provides that "utility means any person except a city, who owns, controls or operates or manages any facility used or to be used in connection with ... the impounding, distribution or furnishing of water to or for the public for compensation." The majority opinion should not ignore the plain meaning of the statute.

Contrary to the argument of the water district, the PSC act was intended only to transfer the city's preexisting power over rates for services rendered by a utility within the city limits. The statute does not grant the PSC jurisdiction over the rates charged by a city-owned utility which is not a utility as defined in KRS 278.010(3).

*Southern Bell Telephone & Telegraph Co. v. City of Louisville*, 265 Ky. 286, 96 S.W.2d 695 (1936), held that the provisions of Section 4(n) of the PSC act did not conflict with Sections 163 and 164 of the Kentucky Constitution. The case carefully distinguished between the rights of city-owned utilities and publicly owned private utilities. The purpose of Section 4(n) of the original PSC act was not to grant the commission jurisdiction over the rates of city-owned utilities, rather the statute was intended to transfer jurisdiction to the commission over public utility rates which had been fixed initially by a city at the time a utility franchise was granted.

This exemption of city-owned water utilities from commission regulation has been a part of the law for at least 58 years. 1936 Kentucky Acts, Chap. 92 § 1(c). *McClellan v. Louisville Water Company*, Ky., 351 S.W.2d 197 (1961), held that the exemption provided for cities extends to all operations of a municipally-owned utility.

*McClellan, supra*, followed a line of cases including *City of Olive Hill v. Public Service Com'n*, 305 Ky. 249, 203 S.W.2d 68 (1947); *Louisville Water Co. v. Preston Street Road Water Dist.*, Ky., 256 S.W.2d 26 (1953) and *Louisville Water Co. v. Public Service Com'n*, Ky., 318 S.W.2d 537 (1958). *McClellan* was followed in *City of Georgetown v. Public Service Com'n*, Ky., 516 S.W.2d 842 (1974) in which the court stated, "We feel compelled to follow the clear language of KRS 278.010(3)."

The Court of Appeals decision does not leave the water district and its customers at

the complete mercy of the city. The circuit court has jurisdiction to adjudicate all issues arising out of the contract on the merits, including any claim that the rates charged by the city are arbitrary or unreasonable.

The rates and services exception has nothing to do with the rates charged by a city-owned utility. The history of the Public Service Commission Acts indicates that the rates and services exception is simply a statutory exception to the power of a city to fix by contract the rates charged by a utility for services inside the city limits. Prior to the adoption of the PSC Acts, cities regulated the rates charged by utilities for services inside the city limits. In exercising its power to grant a franchise to use the public streets pursuant to Sections 163 and 164 of the Kentucky Constitution, a city could establish a utility's initial rates in the franchise agreement. Cf. *Frankfort Natural Gas Co. v. City of Frankfort*, 204 Ky. 254, 263 S.W. 710 (1924). During the existence of the franchise agreement, the city and the utility were free to modify those rates by additional contractual agreement. *Johnson County Gas Co. v. Stafford*, 198 Ky. 208, 248 S.W. 515 (1923).

From a historical perspective, Chapter 278 was adopted in the early 1930's when many utilities had contracts with cities which obligated the utilities to furnish services to the citizens of the city under uniform rates and conditions. The utility was permitted to place its lines along the public ways, and in return, the utility paid an annual flat franchise fee or percentage of revenues to the city.

It is essential to recognize the fact that it is the City, which is not a private or public utility, that is furnishing the service and arbitrarily or by negotiation prescribing a rate. It is not the promulgated service rate of a resale customer of a city that would be an issue. It has been general policy that because the PSC has no jurisdiction over the former, it has no jurisdiction over its rate problems.

KRS 278.040(2) gave the PSC exclusive jurisdiction over the regulation of rates and utilities, but by definition, excluded the city. There was a period of time when cities filed certain reports with the PSC. The remainder of KRS 278.040(2) reserves the rights of a city or other political subdivision, such as a county, to effectuate safety and environmental protection regulations.

*Benzinger v. Union Light, Heat & Power Co.*, 293 Ky. 747, 170 S.W.2d 38 (1943), considered the intention of the legislature as stated in Section 4(n) of the PSC act to the effect that it was expressly stated that the intention was to confer jurisdiction only over the matter of rates and service. *Peoples Gas, supra*, and *Benzinger* indicate that the original Section 4(n), now KRS 278.200 and 278.040(2), created an exception to the authority of cities to regulate the rates of a utility for services rendered inside the city limits. There is nothing in the statutory language which creates an exception to the exemption of city-owned utilities from PSC jurisdiction. The PSC jurisdiction was limited to the rates and services of a utility.

By statutory definition, the City of Franklin is not a public utility subject to the jurisdiction of the PSC. KRS 278.010(3). However, the Simpson County Water District, which is organized under KRS Chapter 74 is considered to be a public utility subject to the jurisdiction of the PSC. KRS 278.015.

The only public utility in this dispute is the Simpson County Water District. The wholesale rates for water sold by the city to the water district do not constitute a charge or other compensation for services rendered by the district. Accordingly, they are not rates within the statutory definition provided in KRS 278.010(11).

In addition, the rates charged by the water district do not relate to the "quality" or "quantity" of the water sold by the district so as to fall within the statutory definition of service. Cf. *Benzinger* 170 S.W.2d at page 41.

KRS 278.200, which gives the PSC jurisdiction over rates of any utility that has been or may be fixed by any contract, franchise or agreement between the utility and any city fails to consider that this contract does not purport to fix the rates charged by the District which is the only public utility in question. The contract sets only the rates

charged by a city-owned utility. KRS 278.-200 does not apply in this situation.

The legislative history of the regulatory acts indicates that sales by a city-owned utility to a water district are exempt from PSC regulation. From approximately 1936 to 1964, both cities and water districts were excepted from the definition of a "utility." In 1964, the General Assembly deleted the exception for water districts and expressly provided that districts were public utilities subject to the jurisdiction of the PSC. *City of Georgetown v. Public Service Com'n*, Ky., 516 S.W.2d 842 (1974). This Court held in the *McClellan* case that a city's exemption from PSC regulation extended to all operations of a city-owned utility, whether within or without city limits. Approximately three years later, in the 1964 amendments to the PSC act, the legislature did not attempt to overrule *McClellan* by subjecting any of the activities of a city-owned utility to commission regulation. The legislature only granted the PSC jurisdiction over rates charged by the water districts.

After that time, a water district could not pass on a wholesale rate increase to its customers without filing a rate case in which the imposition of the new rates by the district could be delayed for five months. KRS 278.-190(2). Again, in 1986, the General Assembly considered the problem of regulatory lag by permitting a water district to pass on an increase in wholesale rates to its customers immediately without commission approval. KRS 278.015(2). Once again, in addressing the problem of regulatory lag, the General Assembly did not subject city-owned utilities to PSC regulation so that the commission could consider the increased wholesale rates of a city-owned utility simultaneously with new retail rates of a water district. There would be no necessity for the 1986 legislation if the wholesale rates of a city-owned utility had been subject to PSC regulation.

KRS 278.200 recognizes the fact that at the time of the enactment of Chapter 278 some utilities had contracts with cities for the rendition of utility services. This section prevents a sudden arbitrary abrogation of a utility contract with a city until a hearing has been held before the PSC in the manner prescribed by the statute. Consequently, the commission could change any rate that has been fixed by contract between the utility and the city for services by a utility within the city as to its citizens but only after a public hearing. In this manner it appears that a legal issue of constitutional proportions, the abrogation of contracts affecting the public, would be avoided by reason of affording due process. The days of city control over public utilities are long past.

Under Section 200, it is clear that because the commission is not bound by any contract, franchise or agreement for service between a utility and the city in which it operates, it can prescribe reasonable rates for a utility to charge within a city. However, because the city itself is not a utility as defined in KRS 278.010(3), a municipal water plant sets its own rates. Accordingly, the city no longer has the power to regulate rates of privately-owned utilities. It has been superseded by the PSC.

A city does retain inherent police power under KRS 278.040(2) over all public utility lines within the city limits and it has statutory jurisdiction by exclusion as a utility under KRS 278.010(3) over any utility plant owned and operated by itself. Therefore it can set its own rates without PSC approval, but not the rates of privately-owned utilities. Moreover, city-owned water or electric plants are not subject to PSC safety or health regulations. Such is the regulatory province of the Kentucky Division of Water (DOW), EPA and other agencies. Cities file no reports with the PSC. Neither can the PSC be an arbitrator of city matters.

In this situation, the city as a supplier is expressly excluded from the definition of a utility in KRS 278.010(3). In view of the fact that the city is specifically excluded from the definition of a utility in the statute, there is no ambiguity or conflict giving the courts a vehicle to construe the city as subject to PSC regulation and exclude its right to file in circuit court to determine the contractual obligations if any to the Simpson County Water District.

In my view the circuit court, and not the PSC, is the proper forum for the adjudication

of the merits of this dispute. I would affirm the Court of Appeals and reverse the trial court.

LEIBSON and SPAIN, JJ., join in this dissent.