**PEOPLES GAS COMPANY OF KENTUCKY, INC., Movant,**

v.

**The CITY OF CORBIN et al., Respondents.**

Supreme Court of Kentucky.

Dec. 15, 1981.

Allen C. Trimble, Forcht & Trimble, P. S. C., Corbin, for movant.

R. L. Ballou, Bahrman & Ballou, Corbin, for respondents.

STEPHENSON, Justice.

The trial court upheld the legality of two ordinances which regulated the location on private property of gas meters, regulators, etc. The Court of Appeals affirmed, reversing the trial court on cross-appeal concerning the applicable penalties of the second ordinance. In view of our disposition of the case this portion is moot. We granted discretionary review and reverse the Court of Appeals.

The Public Service Commission directed Peoples Gas to undertake a plan of correction and improvement of the system providing gas service to Corbin. As a part of the plan, Peoples Gas included a gradual conversion of the system from a low-pressure system to a high-pressure system. As a part of this changeover, most meters had been located in front yards near the street. In 1977 and again in 1979, the city of Corbin enacted ordinances prohibiting the placing of gas meters or appurtenances within

25 feet of a public thoroughfare. The 1979 ordinance provided for a more severe penalty. The preface to the ordinance states that one of its purposes is to eliminate "nuisances, danger, and ugliness."

The trial court found that the meters present an unsightly and unattractive condition and found a possibility of a traffic hazard.

Peoples Gas filed suit against the city to enjoin enforcement of the ordinance.

The trial court upheld the validity of the ordinance but declared the penalty provision unconstitutional. The Court of Appeals affirmed the judgment declaring the ordinance valid but reversed the penalty portion of the judgment declaring the penalty portion within the power of the city and not in violation of the Constitution.

The issue as posed by the trial court is whether the twenty-five-foot requirement of the ordinance is fatally in conflict with 807 KAR 2:025 Section 12. Section 12(5) provides, "When customers are served from high pressure lines, the meters, regulator or regulators and safety devices shall be located as near the utilities' main as practicable."

This regulation was promulgated by authority of KRS 278.040(2):

"The jurisdiction of the commissions shall extend to all *utilities in this state. The energy regulatory commission shall have exclusive jurisdiction over the regulation of rates and service of all energy utilities* and the utility regulatory commission shall have exclusive jurisdiction over the regulation of rates and service of all non-energy utilities. If a utility which is an energy utility also renders service as a non-energy utility, it shall be regulated by the energy commission with respect to all of its rates and services. Provided, however, that nothing in this chapter is intended to limit or restrict the police jurisdiction, contract right or powers of cities or political subdivisions." (Emphasis added.)

"Service" as used in KRS 278.040(2) is defined in KRS 278.010(13) as follows:

"Service" includes any practice or requirement in any way relating to the service of any utility, including the voltage of electricity, the heat units and *pressure of gas*, the purity, pressure and quantity of water, and *in general the quality, quantity and pressure of any commodity* or product used or to be used for or in connection with the business of any utility." (Emphasis added.)

Both the trial court and the Court of Appeals found that there was no fatal conflict in the 25-foot-setback requirement of the ordinance and the regulation requiring meters to be located as near the utility's main as practicable. The trial court also found that as the location of the meter does not affect the quantity and quality of the gas distributed that the Public Service Commission had no right to enact or enforce regulations on this issue.

It is obvious to us that the plain language of KRS 278.040(2) vests jurisdiction over "service" in the commission. The definition of *"service"* as contained in KRS 278.010(13) is equally plain: "pressure of gas ... in general the quality, quantity and pressure of any commodity."

The commission ordered Peoples Gas to improve the system, this improvement being carried out by Peoples Gas certainly by any definition related to the "quality" of service.

Also the regulation directing the placement of meters, regulators, and safety devices where customers are served by "high-pressure" lines was not adopted as a result of whimsy. Although not addressed by the trial court, the record shows some of the problems attendant to a changeover from a low-pressure to a high-pressure system. "Service" also includes "pressure of gas" as involved here.

There is a fundamental conflict between the city ordinance and the regulation since "service" is involved in this dispute.

We are of the opinion that the regulations adopted pursuant to KRS 278.040 preempt this field and the ordinances are invalid.

In reaching this conclusion, we have considered *Benzinger v. Union Light, Heat and*

*Power Co.*, 293 Ky. 747, 170 S.W.2d 38 (1943), and *Peoples Gas Co. v. City of Barbourville*, 291 Ky. 805, 165 S.W.2d 567 (1942).

*Benzinger* relied upon by the trial court involved a question of whether a city could determine that electric wires should be strung on posts or buried underground. "Service" was defined there as in the statute cited here.

*Peoples Gas* involved the terms of an ordinance prescribing lay out of gas lines in order to qualify for a franchise.

In both those cases and here that portion of what is now KRS 278.040(2) which provided "that nothing in this chapter is intended to limit or restrict the police jurisdiction, contract right or power of cities . . ." was considered, and as the situations there did not involve "service" the will of the cities prevails. The language of the statutes in effect in both *Benzinger* and *Peoples Gas* are identical in language to KRS 278.010(13).

The opinion of the Court of Appeals and the judgment of the trial court are reversed with directions to the trial court to enter a judgment in conformity with this opinion.

PALMORE, C. J., and AKER, CLAYTON, STEPHENS, STEPHENSON and STERNBERG, JJ., sitting.

All concur.