TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00346-CR







Tellina Ledford Warren, Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY


NO. 390313, HONORABLE DAVID CRAIN, JUDGE PRESIDING







 Appellant Tellina Ledford Warren was convicted in a jury trial of the misdemeanor
offense of driving a motor vehicle in a public place while intoxicated. Act of May 27, 1983, 68th
Leg., R.S., ch. 303, § 3, 1983 Tex. Gen. Laws 1568, 1575 (Tex. Rev. Civ. Stat. Ann. art. 6701-1(b), since amended and codified at Tex. Penal Code Ann. § 49.04 (West 1994)). The trial court
assessed appellant's punishment at confinement in the county jail for one hundred days probated
for two years and a fine of $1,500.00, with $1,000.00 probated. In five points of error, appellant
asserts that she was denied the effective assistance of trial counsel and that the evidence is
factually insufficient to support the judgment. We have concluded that appellant did not receive
her constitutional right to the effective assistance of counsel, and we will reverse the judgment of
the trial court.

 On the trial of the case, the State offered the testimony of officer Mike Turner and
Sergeant Jeffery Adickes, City of Austin police officers, and the post-arrest videotape of
appellant. Turner testified that on February 28, 1993 at about 1:50 a.m., he was working as a
narcotics undercover officer, driving an unmarked car on Interstate Highway 35. He saw a car
enter the Interstate at a high rate of speed, leave the entry lane, cross into an inner lane, causing
other drivers to "brake," and almost cause a collision. The car picked up speed, and Turner,
driving his car at its top speed of eighty-five miles an hour, could not keep up with the car. 
Turner was attempting to call patrol officers by radio when he saw the car almost collide with
another car ahead of it. The leading car veered into another lane to avoid the collision, and as it
did so, Turner could see that it was an Austin police department patrol car. The patrol car
commenced following the speeding car that had passed. The warning lights of the patrol car were
activated, and the speeding car followed by the patrol car was driven to the shoulder of the road,
where both stopped. Turner stopped his car near the other cars, and stood by as a back-up for
Sergeant Adickes, the driver of the patrol car. Turner saw appellant get out of her car and
accompany Adickes to the rear of her car. As they walked, appellant stumbled and grabbed
Adickes's arm for support. Although he was not watching closely, Turner knew that Adickes
gave appellant some field sobriety tests and then placed her in the patrol car. Turner went over
to the patrol car where he could smell the odor of an alcoholic beverage. Turner remained at the
scene until a wrecker towed appellant's car. Turner was not asked to express his opinion, and he
did not testify that in his opinion appellant was intoxicated.

 Adickes testified that on February 28, 1993 at about 1:55 a.m., he was working
overtime on a federally-funded driving while intoxicated selective traffic enforcement program. 
He was on Interstate Highway 35 following a speeding motorist when his patrol car was nearly
struck from the rear by another speeding car. Adickes veered out of the way and then pursued
the car which almost struck his patrol car. Adickes activated his warning lights and stopped the
speeding car on the shoulder of the highway. Adickes asked appellant, who was driving the car
he stopped, to see her driver's license and her proof of insurance. She got out of her car, and
Adickes smelled the odor of an alcoholic beverage and noticed that appellant's eyes were glassy
and bloodshot. Appellant, who was wearing "high spiked heeled" shoes, stumbled and grabbed
Adickes's arm for support when they walked to the rear of her car.

 In reply to Adickes's question, appellant said she had three drinks at a club, the
name of which she slurred. Adickes administered several field sobriety tests to appellant. He
testified appellant failed all of the tests. In his opinion she was clearly intoxicated, and he arrested
her for driving while intoxicated. Adickes handcuffed appellant and took her to the police station
where she was videotaped. This tape was exhibited to the jury at appellant's trial.

 At trial, appellant's trial attorney offered no evidence, and the jury returned a guilty
verdict. Appellant immediately retained another lawyer to represent her and notified her trial
counsel she no longer wanted him to represent her. The newly retained counsel filed a motion
for new trial alleging that appellant had not received effective assistance of counsel in the trial of
her case. Since her new counsel had prior commitments that required him to go out of the
country, he, with appellant's concurrence, arranged for the attorney who now represents appellant
on appeal to represent her on the hearing of the motion for new trial.

 Although the issue of ineffective counsel is generally raised in a post-conviction
habeas corpus proceeding, in some instances the issue of ineffective assistance of trial counsel may
be raised in a motion for new trial. Reyes v. State, 849 S.W.2d 812, 815 (Tex. Crim. App.
1993); see also Butler v. State, 716 S.W.2d 48, 51 (Tex. Crim. App. 1986); Kelly Don Smith v.
State, No. 7-94-136-CR, slip op. at 3-4 (Tex. App.--Amarillo Mar. 16, 1995, no pet. h.).

 On the motion for new trial hearing, Michael Eason testified that he and Renee
Breen met appellant at Picassos, a club on Sixth Street, about 10:00 p.m., and remained there
until about 1:30 a.m. Eason testified that appellant drank three bottles of beer during the time
they were together; he also drank three bottles of beer, but Breen did not drink any alcoholic
beverages. All three drove to the club and left in their own cars. He was of the opinion that
appellant was not intoxicated when she left the club.

 Appellant testified at the hearing of the motion for new trial that she was a
supervisor in the clerk's office of the United States Bankruptcy court. She supervised employees
doing clerical work. In these duties she never appeared in court. Her only experience in court
was when she obtained an uncontested divorce. Appellant had lived in Austin only a short time,
and one of her social acquaintances was Michael Andow, who worked as a paralegal for Carlos
Cardenas, a criminal defense lawyer. 

 On March 9, 1993 soon after her arrest, appellant met with Andow and at his
request she discussed with him the facts of her case. She informed him that Michael Eason and
Renee Breen were witnesses who could testify that they had been with her that evening just before
she was arrested and that they could testify she was not intoxicated. Andow told her his employer
would represent her, and that the fee would be $1,000.00 if she entered a guilty plea, but if she
had a jury trial, the total fee would be $2,400.00. Appellant paid the $1,000.00 in installments. 
Cardenas belonged to an El Paso firm which maintained an office in Austin. Appellant first met
Cardenas on July 13, 1993; appellant was shown a copy of the offense report, and she talked to
Cardenas about the witnesses Eason and Breen. They discussed entering a plea of guilty, but
appellant would not agree to do so and wanted to see a copy of the videotape made soon after her
arrest. Andow showed appellant a copy of the tape a week or two later. 

 Although appellant was not aware of it at the time, a continuance was granted for
a September setting of her case. The case was reset for October, but Andow informed her not to
worry about the settings and that "everything was hinging on a motion to suppress." On
December 3, 1993 Andow called appellant and told her that her case was set for trial on January
11, 1994; he reminded her that she needed to pay the balance of $1,400.00 before that time. 
Appellant commenced paying the remainder of her fee.

 Later in December Andow called appellant and told her she would be getting a
letter that another member of the law firm would be representing her but that this was a mere
formality. Appellant received the letter dated December 30, 1993 from the law firm which
advised her of change of counsel and her option of obtaining other counsel if she desired.

 On January 11, 1994 appellant met Cardenas at the courthouse, but another case
went to trial that day, and appellant was told her case would be tried later in the month. On
January 13, 1994, unbeknown to appellant, the El Paso law firm filed in appellant's case a
"Notice of Change of Designated Counsel." The notice designated a member of the firm other
than Cardenas as the attorney of record in appellant's case.

 On January 18, 1994 appellant's case was called for trial and Cardenas appeared
to represent her. Appellant again discussed with counsel the calling of Eason and Breen to testify
in her behalf. Cardenas told her that she did not need to worry about her witnesses because the
State had the burden of proof; he stated that he was the lawyer and appellant could trust his
decisions. The jury was selected, but counsel did not have the jury selection proceeding reported
and no record of the proceeding was available for appeal. The State rested at the end of the day
after its two witnesses had testified and after it had introduced the videotape made after appellant's
arrest.

 The proceedings were recessed for the day. Later that evening appellant became
upset and dissatisfied with her representation. She was unsuccessful in her attempt to call
Cardenas that night, but she reached him the next morning at 6:30 a.m. She told him they needed
to talk before going back to court. She asked counsel about calling her witnesses. Counsel
repeated his statement that the State had the burden of proof and that he would handle the matters
of defense in his argument. Counsel instructed appellant to give him written suggestions for his
argument. Counsel did not call the witnesses that appellant suggested. Counsel did not prepare
appellant as a witness and refused to call her as a witness to testify in her own defense. 

 At the hearing on appellant's motion for new trial, the trial court took judicial
notice of a court order signed December 15, 1993 which suspended Cardenas from the practice
of law from March 4, 1994 until June 4, 1994 and placed him on probation until March 4, 1997. 
The order contained a provision that Cardenas was to immediately notify each of his clients in
writing of his suspension. He was ordered to return all files, papers, monies, and other property
belonging to his clients or former clients to them or to another attorney whom they designated. 
Suspended counsel was to notify the court entering the order within thirty days that he had
complied with the order. 

 A convicted defendant's claim that counsel's assistance was so defective as to
require reversal of conviction has two components. First, the defendant must show that counsel's
performance was deficient. This requires a showing that counsel made errors so serious that
counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. 
Second, the defendant must show that the deficient performance prejudiced the defense. This
requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial,
a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that
the conviction resulted from a breakdown in the adversary process that renders the result
unreliable. Strickland v. Washington, 466 U.S. 668, 687 (1984). The Strickland test was adopted
in this state in Hernandez v. State, 726 S.W.2d 53 (Tex. Crim. App. 1986); see O'Hara v. State,
837 S.W.2d 139 (Tex. App.--Austin 1992, no pet.). A court must indulge a strong presumption
that counsel's conduct falls within the wide range of reasonable professional assistance; that is,
the defendant must overcome the presumption that, under the circumstances, the challenged action
might be considered sound trial strategy. Strickland, 466 U.S. at 689.

 In any case presenting an ineffectiveness claim, the performance inquiry must be
whether counsel's assistance was reasonable considering all the circumstances. Strickland, 466
U.S. at 688. A court deciding an ineffectiveness claim must judge the reasonableness of counsel's
challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. 
Strickland, 466 U.S. at 690. The burden of proving ineffective assistance of counsel rests upon
the convicted defendant by a preponderance of the evidence. Moore v. State, 694 S.W.2d 528,
531 (Tex. Crim. App. 1985); Haynes v. State, 790 S.W.2d 824, 827 (Tex. App.--Austin 1990,
no pet.). The reasonableness of counsel's actions may be determined or substantially influenced
by a defendant's own statements or actions. Counsel's actions are usually based quite properly
on informed strategic choices made by the defendant and on information supplied by the
defendant. Strickland, 466 U.S. at 691.

 The most flagrant deficiency in trial counsel's representation of appellant was his
failure to heed his client's desire to testify in her own defense. In not allowing his client to testify
in her own defense, counsel made a decision outside the range of professional competence. The
decision was wrong and it affected appellant's constitutional rights. Every criminal defendant is
privileged to testify in his own defense, or to refuse to do so. Harris v. New York, 401 U.S. 222,
225 (1971). The defendant's right to testify is a matter of constitutional dimension. Brooks v.
Tennessee, 406 U.S. 605, 612 (1972); Faretta v. California, 422 U.S. 806, 834, n.45 (1975);
Hollenbeck v. Estelle, 672 F.2d 451 (5th Cir. 1982).

 The American Bar Association standards are instructive.



Standard 4-5.2. Control and Direction of the Case.


 (a) Certain decisions relating to the conduct of the case are ultimately for the
accused and others are ultimately for defense counsel. The decisions which
are to be made by the accused after full consultation with counsel include:


 (i)   what pleas to enter;


 (ii)  whether to accept a plea agreement;


 (iii) whether to waive jury trial;


 (iv)  whether to testify in his or her own behalf; and


 (v)   whether to appeal.


 (b) Strategic and tactical decisions should be made by defense counsel after
consultation with the client where feasible and appropriate. Such decisions
include what witnesses to call, whether and how to conduct cross-examination,
what jurors to accept or strike, what trial motions should be made, and what
evidence should be introduced.


 (c) If a disagreement on significant matters of tactics or strategy arises
between defense counsel the client, defense counsel should make a record of
the circumstances, counsel's advice and reasons, and the conclusions reached. 
The record should be made in a manner which protects the confidentiality of
the lawyer-client relationship.



ABA Standards for Criminal Justice, Prosecution Function and Defense Function 4-5.2 (3d ed.
1993).

 Appellant testified on the motion for new trial that on the trial of her case her
counsel would not allow her to testify in her own defense and that he did not counsel and prepare
her to testify in her own defense. The State admits that this was the appellant's testimony on the
motion for new trial. This testimony was not rebutted. Neither appellant nor the State called
Cardenas to testify. However, the State on appeal argues that appellant's testimony was self-serving, and it should be presumed that it was not given credit by the trial court. Although this
may be a general rule, it is not applicable in this case on the issue of ineffectiveness of counsel
alleged in a motion for new trial. The trial court did not make a credibility finding of appellant's
testimony on the hearing of the motion for new trial, nor should it have done so. In determining
a motion for new trial, "The judge shall not sum up, discuss or comment on evidence in the case. 
The judge shall grant or refuse the motion for new trial." Tex. R. App. P. 31(e)(2); see Baker
v. State, 625 S.W.2d 849 (Tex. App.--Amarillo 1981, no pet.); Rains v. State, 7 Tex. Ct. App.
588 (1880). We do not fault the trial judge for not assessing the credibility of the witnesses
because he followed the appellate rules. Nevertheless, from the record an appellate court cannot
determine whether the trial court discredited appellant's testimony or misapplied the applicable
law that a defendant has the constitutional right to testify in her own defense. Furthermore, an
appellate court has a special function when the issue presented is ineffective assistance of counsel. 
In determining whether appellant had effective assistance of counsel, an appellate court must make
an independent judgment based on mixed questions of law and fact. Ex parte Owens, 860 S.W.2d
727, 729 (Tex. App.--Austin 1993, pet. ref'd); see also Martin v. McCotter, 796 F.2d 813, 817
(5th Cir. 1986); Ricalday v. Procuier, 736 F.2d 203, 206 (5th Cir. 1984); Vela v. Estelle, 708
F.2d 954, 961 (5th Cir. 1983).

 When a defendant is deprived by counsel of her constitutional right to testify in her
own defense, counsel has not provided effective assistance. This deprivation alone shows that
counsel's performance was deficient and it shows a professional error so serious that counsel was
not functioning as the "counsel" guaranteed by the Sixth Amendment. We hold that counsel's
serious error deprived appellant of a fair trial--a trial whose result was reliable.

 In addition, counsel's apparent refusal to investigate and offer the testimony of the
witnesses Eason and Breen presents a serious question. It is difficult to believe that trial strategy
or tactics would lead counsel to defend a driving while intoxicated case, before a jury, on a plea
of not guilty, without offering some testimony in rebuttal when the State clearly had a prima facie
case. Moreover, trial counsel did not, as required by the suspension order, inform his client of
his impending suspension from the practice of law. Instead appellant was deceived concerning
the bar grievance matter. If counsel had informed appellant of his suspension as ordered, she
would then have had an option, if she thought it in her best interest, to recover her attorney's fee
and retain other counsel for the trial of her case. Appellant was deprived of this option.

 We hold appellant did not have effective assistance of counsel because trial counsel
deprived her of her constitutional right to testify in her own defense. We need not decide whether
the evidence was factually insufficient to support the judgment because even if we so found,
appellant could be retried. Stone v. State, 823 S.W.2d 375, (Tex. App.--Austin 1992, pet. ref'd);
see also Tibbs v. Florida, 457 U.S. 31, 32 (1982).

 The judgment is reversed, and the cause is remanded to the trial court.



 

 Carl E. F. Dally, Justice

Before Chief Justice Carroll, Justices B. A. Smith and Dally*

Reversed and Remanded

Filed: June 21, 1995

Do Not Publish









* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).