**CITY OF GREENUP, Appellant,**

v.

**PUBLIC SERVICE COMMISSION; South Shore Water Works Co., Appellees.**

No. 2004–CA–001325–MR.

Court of Appeals of Kentucky.

July 1, 2005.

Discretionary Review Denied by Supreme Court Feb. 15, 2006.

John N. Hughes, Frankfort, KY, William D. Kirkland, R. Stephen McGinnis, Greenup, KY, for appellant.

Bruce F. Clark, Margaret R. Grant, R. Benjamin Crittenden, Frankfort, KY, for appellee South Shore Water Works Co.

Gerald E. Wuetcher, John E.B. Pinney, Frankfort, KY, for appellee Public Service Commission.

Before COMBS, Chief Judge; GUIDUGLI, Judge; MILLER, Senior Judge.[1]

## OPINION

MILLER, Senior Judge.

The City of Greenup (Greenup) appeals from an order of the Franklin Circuit Court which affirmed an order of the Public Service Commission (PSC) determining (1) that the agency had authority to determine its own jurisdiction, and (2) that a valid contract had been formed between Greenup and South Shore under which Greenup was to provide wholesale water to South Shore. We agree that the PSC may determine its own jurisdiction. However, because the PSC erred in its determination that a valid contract had been formed between Greenup and South Shore, we reverse and remand the matter to the circuit court for entry of an order reversing the decision of the PSC.

## BACKGROUND

Greenup is a city of the fifth class located in Greenup County, Kentucky. Kentucky Revised Statutes (KRS) 81.010(5). It owns and operates a water treatment and distribution system which provides municipal water service to approximately 2,900 customers within the city and in certain of the unincorporated areas of Greenup County. As a municipal water system, Greenup's water system is not, in the absence of a contract to provide utility services to a regulated utility (e.g., South Shore), subject to regulation by the PSC. *Simpson County Water District v. City of Franklin,* 872 S.W.2d 460, 463 (Ky.1994).

South Shore is a corporation organized under the laws of the Commonwealth of Kentucky. KRS Chapter 271. South Shore owns and operates water facilities in the vicinity of South Shore, Kentucky. It distributes water to approximately 2,264 customers. South Shore is a utility subject to PSC jurisdiction. KRS 278.010(3)(c); KRS 278.040(1).

Historically, South Shore has obtained its entire water supply from a "wellfield" situated in Greenup County. Beginning in the late 1980s, South Shore began experiencing problems with the quality and quantity of water from this field. Follow-

1. Senior Judge John D. Miller sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

ing a study of the problem, South Shore concluded that the most feasible remedy for the problem was to purchase wholesale water from Greenup by connecting with its municipal water system.

South Shore provided copies of its study to, among others, Greenup. Thereafter, Greenup's Mayor, Charles Veach, requested that representatives of South Shore attend a regularly scheduled City Council meeting to discuss the matter. On April 7, 1998, South Shore President, Joe Hannah, appeared before the Greenup City Council and presented an "Application for Wholesale Water Service." The application presented a reasonably comprehensive proposal for the provisioning of water by Greenup to South Shore.

The minutes of the April 7, 1998, Council meeting included the following:

> Joe Hannah from South Shore Water Works presented an application to Mayor and council for wholesale water service. Water to the north side of Plum Fork Hill.
>
> A motion was made by Neil Wright and seconded by Paul Judkins to accept the application for wholesale water service from South Shore Water Works subject to engineering approval from the Division of Water and funding of Phase 6 water line extension.
>
> . . . . .
>
> Motion Carried: 6–0

Subsequent to the April 7 meeting, Greenup modified its proposed Phase VI project (an expansion program under contemplation prior to the April 7 meeting) to accommodate the increase in demand which would result from the South Shore proposal. Similarly, South Shore asserts that it implemented changes in its facilities at significant cost to accommodate the expected interconnection.

As the Phase VI project neared completion, South Shore and Greenup entered into discussions regarding a water user agreement. In November 2001 the discussions reached an impasse over the provisions of a minimum monthly bill for wholesale service. On November 28, 2001, South Shore tendered a check for $5,000.00 to Greenup as payment for all "tapping fees" related to the interconnection. Greenup refused to accept the payment.

On December 4, 2001, South Shore filed a Complaint with the PSC alleging that its April 7, 1998, Application for Wholesale Water Service and the corresponding vote of acceptance by the Greenup City Council constituted a contract for wholesale water and requested that the agency enter an order directing Greenup to provide water pursuant to its terms.

On January 11, 2002, the PSC issued an order dismissing the Complaint on the basis that South Shore had failed to present a prima facie case of the existence of a contract and, consequently, that it had no jurisdiction.

On January 28, 2002, South Shore filed an "Amended and Substituted Complaint." The PSC ordered the City to file an answer. Following discovery, several procedural motions, and a brief procedural hearing, the matter was submitted for decision.

On July 24, 2002, the PSC changed its position and entered an order determining that it had authority to decide whether a contract had been formed between Greenup and South Shore. On the merits, the PSC determined that a contract had in fact been formed, thus giving the agency jurisdiction pursuant to KRS 278.200. The PSC ordered Greenup to file tariffs reflecting the PSC's interpretation of their agreement.

Greenup subsequently appealed to the Franklin Circuit Court. KRS 278.410. On June 9, 2004, the Franklin Circuit Court entered an Opinion and Order affirming the decision of the PSC. This appeal followed.

### PSC JURISDICTION

■ First, Greenup contends that the PSC lacked authority to determine its own jurisdiction by deciding whether a contract had been formed between Greenup and South Shore for the provisioning of wholesale water. Greenup contends the existence of a valid contract is an issue for judicial determination. Greenup argues that "[b]efore the Public Service Commission can assert its jurisdiction, there must be a valid contract to enforce," and that "[t]he issue presented by South Shore is not one of rates and service, but of contract law, an issue not within the scope of the Public Service Commission's limited jurisdiction." KRS 278.040(2) provides as follows:

> The jurisdiction of the commission shall extend to all utilities in this state. The commission shall have exclusive jurisdiction over the regulation of rates and service of utilities, but with that exception nothing in this chapter is intended to limit or restrict the police jurisdiction, contract rights or powers of cities or political subdivisions. (Emphasis added).

KRS 278.010(3)(d) exempts from the definition of a utility a city which distributes or furnishes water to the public for compensation. KRS 278.200, however, provides an exception to this exemption when a city contracts with a regulated utility (e.g. South Shore) to furnish water. Specifically, KRS 278.200 sets forth:

> The commission may, under the provisions of this chapter, originate, establish, change, promulgate and enforce

*any rate or service standard of any utility that has been or may be fixed by any contract, franchise or agreement between the utility and any city, and all rights, privileges and obligations arising out of any such contract, franchise or agreement, regulating any such rate or service standard, shall be subject to the jurisdiction and supervision of the commission, but no such rate or service standard shall be changed, nor any contract, franchise or agreement affecting it abrogated or changed, until a hearing has been had before the commission in the manner prescribed in this chapter.* (Emphasis added).

■ In summary, the PSC does not have jurisdiction over utility services furnished by a municipality except to the extent that those services are rendered pursuant to a contract with a utility which is regulated by the PSC. In such cases the municipality, in the matters covered under the contract, is subject to the jurisdiction of the PSC.

In this case, South Shore alleged the existence of a contract, which, if valid, would have the effect of bringing matters covered under the contract within the jurisdiction of the PSC. Greenup denied the existence of a contract. Did Greenup's summary and manifest denial of the existence of a contract preemptively divest the PSC of jurisdiction? Or, was the PSC authorized to undertake a review of relevant circumstances and determine if a contract had been formed between the parties; thus, effectively determining for itself whether the matter is within its jurisdiction? It seems the issue is one of initial impression.

■ We think it a sound principle of law that a quasi-judicial agency such as the PSC, like a Court, has authority, by implication, to determine its own jurisdiction.

In 2 Am.Jur.2d *Administrative Law* § 284 (2004), the rule applicable to this situation is stated as follows:

> Absent a patent and unambiguous lack of jurisdiction, a tribunal having general subject matter jurisdiction of a case possesses authority to determine its own jurisdiction, and a party challenging that jurisdiction has an adequate remedy via appeal from its holding that it has jurisdiction. If a statute authorizes an administrative agency to act in a particular situation, it necessarily confers upon the agency authority to determine whether the situation is one in which the agency is authorized to determine the coverage of the statute—a question that cannot be initially decided by a court. However, an administrative agency's determination as to its jurisdiction is not conclusive upon the courts; it is a judicial function finally to decide the limits of the statutory power of an administrative agency. (Citations omitted).

Under the facts presented, we are of the opinion the PSC had the authority to review the circumstances at hand and determine if it had jurisdiction over the matter on the basis a contract had been formed between Greenup and South Shore. We are not confronted with a case where there was manifestly not a contract and, perforce, the PSC patently and unambiguously lacked jurisdiction. An application for wholesale water services had been filed by South Shore with the Greenup City Council; the application had been accepted by the City Council; Greenup had incorporated the anticipated additional volume into its Phase VI plans; and Greenup had taken measures to accommodate the hookup. Hence, we are of the opinion the PSC properly undertook an analysis to determine whether a contract had been formed between Greenup and South Shore.

We are buttressed in so holding by noting that Greenup, by bringing an appeal from the PSC's decision, has invoked the power of the Courts to review de novo the issue of whether a contract had been formed under the circumstances of this case, and has thereby obtained the judicial review it would have obtained had the case been heard in the Courts in the first instance.

Having concluded that the PSC has authority to determine its own jurisdiction, we advance to Greenup's further argument.

## CONTRACT FORMATION

■ Greenup contends that the PSC erroneously determined that a valid contract existed because the alleged agreement with South Shore failed to comply with the statutory procedures for cities to follow in executing contracts.

As there are no facts in dispute, we are faced with but a question of law. Accordingly, our review is de novo. *Revenue Cabinet v. Comcast Cablevision of the South,* 147 S.W.3d 743, 747 (Ky.App.2003).

In its July 24, 2002, order the PSC stated "[w]e find no merit in Greenup's contention that no contract could be entered without the actions of Greenup's mayor." This conclusion of law, however, diametrically conflicts with KRS 83A.130(8), which provides as follows:

> *All* ... contracts and written obligations of the city *shall* be made and executed by the mayor or his agent designated by executive order. (Emphasis added).

KRS 446.080(4) prescribes that in construing statutes "[a]ll words and phrases *shall* be construed according to the common and approved usage of language...." (Emphasis added). "In common or ordinary parlance, and in its ordinary signification, the term 'shall' is a word of command

and ... must be given a compulsory meaning." Black's Law Dictionary 1233 (5th ed.1979). Shall means shall. *Vandertoll v. Commonwealth*, 110 S.W.3d 789, 795–796 (Ky.2003).

■ We are of the opinion the PSC erred in concluding that a contract could be entered into without action by the mayor of Greenup. Pursuant to KRS 83A.130(8), a contract can only "be made" and must be executed by the mayor. The PSC's conclusion that a contract may be formed absent action by the mayor is an erroneous conclusion of law.

Further, we construe the statute as requiring a contract entered into by a municipality to be in written format so that it may be executed by the signature of the mayor. It is uncontested that a written contract executed by the mayor does not exist in this case. This being so, it follows that no valid express contract was formed.

Moreover, KRS 83A.130(8) unambiguously categorizes the making of a contract as an executive function. KRS 83A.130(11) provides that "[t]he council shall not perform any executive functions except those functions assigned to it by statute." The making and execution of contracts is not assigned to the city council by statute. The PSC erroneously concluded that the vote in favor of the application at the April 7, 1998, council meeting was sufficient to bind Greenup to a contract for the provisioning of wholesale water to South Shore.

The PSC determined, as a conclusion of law that, "[t]he resolution of Greenup's City Council, duly recorded, is sufficient action to constitute a binding acceptance." This conclusion of law conflicts with KRS 83A.130(8). Under this statute all contracts must be "made and executed by the mayor." The PSC's conclusion is in direct contravention of the statute.

■ The statutory provisions concerning the formation of a contract by a municipality must be strictly adhered to. As stated in *City of Princeton v. Princeton Electric Light & Power Co.*, 166 Ky. 730, 179 S.W. 1074, 1079 (Ky.1915):

> The laws provide how municipalities may bind themselves, and the contracts to be obligatory must be made in the manner the laws prescribe. A different rule prevails in regard to municipalities to that which governs private persons and private corporations. The persons who contract with municipal corporations must, at their peril, know the rights and powers of the officers of such municipalities to make contracts and the manner in which they must make them. Any other rule would destroy all the restrictions which are thrown around the people of municipalities for their protection by the statute laws and the Constitution, and would render abortive all such provisions. The rule in certain instances may be harsh, but no other is practical.

The foregoing principle was recognized of late in *Worden v. Louisville and Jefferson County Metropolitan Sewer District*, 847 F.Supp. 75 (W.D.Ky.1994).

As the statutorily mandated procedure for creating a contract by a city was not followed, a valid and enforceable contract for the provisioning of wholesale water was not formed. The PSC erred in concluding to the contrary. We accordingly reverse the agency's order of July 24, 2002.

■ The PSC's conclusion that a contract had been formed appears to have been based at least to some extent upon the conduct of the parties, which we construe as invoking the principles of contract by implication. However, it is well established that a municipality may not enter into a contract by implication. *Louisville*

*Extension Water District v. Sloss,* 314 Ky. 500, 236 S.W.2d 265 (1951).

For the foregoing reasons the judgment of the Franklin Circuit Court is reversed, and the matter is remanded for entry of an order reversing the agency's order of July 24, 2002.

ALL CONCUR.