RENDERED:  FEBRUARY 12, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0678-MR

RIVERSIDE GENERATING                                                    APPELLANT
COMPANY, L.L.C.


                        APPEAL FROM FRANKLIN CIRCUIT COURT
v.                      HONORABLE PHILLIP J. SHEPHERD, JUDGE
                        ACTION NO. 19-CI-00598



KENTUCKY PUBLIC SERVICE                                                  APPELLEES
COMMISSION AND KENTUCKY
POWER COMPANY



                                   OPINION
                                  AFFIRMING

                              ** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND L. THOMPSON, JUDGES.

COMBS, JUDGE:  This case involves a rate dispute in which Riverside Generating

Company, L.L.C., (Riverside), appeals from an opinion and order of the Franklin

Circuit Court affirming a decision of the Kentucky Public Service Commission

(the Commission) that was entered in favor of Kentucky Power Company

(Kentucky Power).  The circuit court concluded:  that the findings of the

Commission were supported by substantial evidence; that the retail rate charged to Riverside by Kentucky Power is in accordance with state law; and that Kentucky Power did not engage in rate discrimination with respect to Riverside. After our review, we affirm.

Kentucky Power is a vertically integrated, regulated utility. It serves customers in twenty eastern Kentucky counties. Kentucky Power is subject to the jurisdiction of the Commission, which regulates its rates and services.

Kentucky Power is a member of PJM Interconnection, LLC (PJM), a regional transmission organization (RTO) that coordinates the transmission of wholesale electricity through thirteen states and the District of Columbia. PJM members collaborate to buy and sell power to each other through an integrated grid system. These transactions help to ensure grid reliability throughout the region. PJM is subject to the jurisdiction of the Federal Energy Regulatory Commission (FERC).

Riverside is a merchant power-generator based in New Jersey. It is not a regulated utility. Riverside is a member of PJM and sells power that it generates on the PJM wholesale market. Five of its natural gas-fired electric power generators are connected to Kentucky Power's transmission grid. These generators are located at 25038 U.S. Highway 23 in Catlettsburg, Kentucky. Three of the power generators sit on a site referred to as "Zelda"; the other two are on an

adjacent site referred to as "Foothills." The neighboring sites share infrastructure, and all five generators are generally operated from a single control room located on the Zelda site.

Riverside generates electricity in its Kentucky facilities for sale on the wholesale market only when it is profitable to do so – approximately ten percent of the hours in any year. During the remaining ninety percent of the hours, Riverside requires electric energy produced outside its generators to power the auxiliary equipment necessary for its operations (lights, heat, air conditioning, *etc*.). This energy is characterized as "station power."

Because it is a large, power-generating facility, Riverside takes Kentucky Power's service under the provisions of a tariff aimed at non-utility generators of power -- "Tariff NUG." Riverside is the only Kentucky Power customer taking service pursuant to this tariff.

Tariff NUG does not include rates. Instead, it requires a power-generating customer to take service at retail rates during periods when it is not generating energy sufficient to meet its internal requirements. However, Tariff NUG contains a special provision meant to accommodate power-generating customers that intend to sell output on the wholesale market and which can self-supply their own energy requirements through commonly owned, yet remote, generators. This means of obtaining energy through an affiliated, off-site facility is

commonly referred to as "remote" self-supply. This provision enables the power-generating customer to take service for station power under the wholesale transmission framework established by PJM and governed by its Open Access Transmission Tariff (OATT) as authorized by the FERC. Power generators can also "on-site" self-supply by redirecting some of their own energy output for internal use ("behind-the-meter" production) or "third-party" supply by drawing power off the grid from unaffiliated providers. Riverside receives the auxiliary energy that it requires for station power from Kentucky Power -- a third-party supply arrangement.

Historically, Riverside has paid retail rates for electric service in accordance with Kentucky Power's "Tariff IGS (Industrial General Service)" for the 90% of the hours that it did not generate energy sufficient to meet its station power requirements. Kentucky Power's Tariff IGS rates apply to service that it supplies to its largest industrial and commercial retail customers.

On December 13, 2017, Riverside filed a complaint with the Commission. It contended that its Kentucky generation sites (Zelda and Foothills) consistently produce significantly more energy than Riverside consumes for its own operations and that, as a consequence, it is entitled to take service pursuant to the special terms and conditions provision of Tariff NUG. By self-supplying its station power needs within PJM's wholesale transmission framework under the

-4-

OATT rather than pursuant to Kentucky Power's less favorable, Commission-approved, Tariff IGS, Riverside argued that it could realize an annual cost savings of $1.1 million.

Riverside and Kentucky Power filed testimony and responded to data requests from the Commission. Following a hearing conducted in September 2018, the parties submitted extensive briefs. In an order entered on May 14, 2019, the Commission held that Riverside could not satisfy the special terms and conditions of Tariff NUG (which allow it to remotely self-supply its station power) because Riverside's generators at Zelda and Foothills are not remote sites but are instead separate parts of a single facility. Consequently, Kentucky Power is authorized by the provisions of Tariff NUG to supply energy at retail rates during periods when Riverside does not generate energy sufficient to meet its internal requirements.

Riverside also contended that regardless of the decision concerning its ability to remotely self-supply its station power, Tariff NUG should be interpreted to permit Riverside to offset its monthly energy consumption with its generated output (an accounting process referred to as "netting") on a wholesale basis pursuant to protocols established by PJM and the FERC. The Commission rejected that contention as having been insufficiently raised for consideration.

Riverside filed an action for review in the Franklin Circuit Court on June 12, 2019. Riverside alleged that the Commission's findings of fact were not supported by substantial evidence and that its order was unreasonable and unlawful because it misapplied the provisions of Tariff NUG. The circuit court rejected these arguments and affirmed the Commission's order. This appeal followed.

"The [Commission] acts as a quasi-judicial agency utilizing its authority to conduct hearings, render findings of fact and conclusions of law, and utilizing its expertise in the area and to the merits of rates and service issues." *Simpson County Water Dist. v. City of Franklin*, 872 S.W.2d 460, 465 (Ky. 1994). It exercises exclusive jurisdiction over the regulation of rates and service of utilities in the Commonwealth of Kentucky. KRS[1] 278.040(2). Therefore, judicial review of an order entered by the Commission is narrowly circumscribed.

> In all trials, actions or proceedings arising under the preceding provisions of this chapter or growing out of the commission's exercise of the authority or powers granted to it, the party seeking to set aside any determination, requirement, direction or order of the commission shall have the burden of proof to show by clear and satisfactory evidence that the determination, requirement, direction or order is unreasonable or unlawful.

KRS 278.430.

---

[1] Kentucky Revised Statutes.

The orders of the Commission "can be found unreasonable only if it is determined that the evidence presented leaves no room for difference of opinion among reasonable minds." *Kentucky Indus. Utility Customers, Inc. v. Kentucky Utilities Co.*, 983 S.W.2d 493, 499 (Ky. 1998) (citing *Energy Regulatory Comm'n v. Kentucky Power*, 605 S.W.2d 46 (Ky. App. 1980)). We review questions of law *de novo*. *City of Greenup v. Public Service Comm'n*, 182 S.W.3d 535, 539 (Ky. App. 2005).

On appeal, Riverside argues first that the Commission's order is not supported by substantial evidence because its Zelda and Foothills generators are located on separate sites. Thus, it believes that it qualifies as a matter of law for special treatment as a remote self-supplier of its station power requirements. We disagree.

Tariff NUG was approved by the Commission in 2001. It was established by Kentucky Power following the FERC's acceptance of numerous RTO tariff provisions, including the PJM tariff provision authorizing an independent, wholesale energy producer to net the station power that it consumed against its wholesale transactions. These tariff provisions were aimed at leveling the playing field between vertically integrated utilities and independent wholesale generators. The special terms and conditions of Tariff NUG provide as follows:

> Customers desiring to provide Startup and Station Power
> *from other generation facilities owned by the same*

> *individual business entity that are not located on the site of the customer's generator (remote self-supply)*, shall take service under the terms and conditions contained within the applicable Open Access Transmission Tariff [OATT] as filed with and accepted by the Federal Energy Regulatory Commission.

(Emphasis added.)

On appeal, Riverside bears the burden of showing by clear and convincing evidence that the Commission's determination is unreasonable. The Commission considered evidence tending to show that Riverside's Zelda and Foothills sites are both physically and operationally a single generation facility and not "other generation facilities." The sites share contiguous real property; a single mailing address; a single entrance, security gate, and access road; signage; a nine-mile natural gas pipeline linking to the Tennessee Gas Pipeline station; a single water line; a single water meter; administrative space and staff; a single warehouse; a single septic system; and a single retail account with Kentucky Power. The sites are surrounded by a single chain-link fence and are separated merely by a fence bisecting the interior of the property.

The evidence showed that Riverside's five generators are generally operated from a single control room. The Commission determined that Riverside's Zelda and Foothills sites compose a single generation facility, operating as a unit, and are not "other" generators supplying power remotely. Riverside cannot show by clear and convincing evidence that that determination is unreasonable or

unlawful.  Although Riverside takes issue with the definition of "remote self-supply," the phrase most certainly does not refer to the generation of power through generators operating upon contiguous sites at a single facility.  While Riverside may have the ability ultimately to "on-site" self-supply its station power requirements when it is online and producing energy, it does not generate sufficient energy "remotely" to meet its station power requirements as provided by the text of the tariff.  The Commission did not clearly err in its determination, and the order cannot be set aside on this basis.

Nor can Riverside show that the Commission erred as a matter of law in its application of the provisions of Tariff NUG.  By its express terms, Tariff NUG applies to customers with generation facilities that intend to "schedule, deliver and sell the net electric output of the facility at wholesale, and who [*sic*] require Commissioning Power, Startup Power and/or Station Power service."  The tariff provides that customers requiring station power "shall take service under the generally available demand-metered tariff appropriate for the customer's Station Power requirements."  The Commission determined that Riverside's Zelda and Foothills sites compose a single generation facility and are not "other," remote generators under the special terms and conditions of the tariff.  The Commission properly applied the tariff as written.  It concluded that the "generally available demand-metered tariff" appropriate for Riverside was Tariff IGS, the tariff

applicable to large industrial and commercial retail customers. With respect to Riverside's station power service, the Commission did not err by concluding that the transaction was nothing more than a typical retail sale of energy to a customer. Kentucky Power's provision of station power to a generating facility that is offline and not generating power clearly constitutes a retail sale because it is an ordinary sale of energy directly to an end-user of the power supplied. There was no error, and the Commission's order cannot be set aside on this basis.

Next, Riverside argues that the Commission erred as a matter of law by concluding that Kentucky Power is not required to follow PJM tariff protocol and FERC standards concerning "netting" of station power. It notes that the provisions of Tariff IGS make absolutely no reference to "netting" and argues that where its power generation is net positive when compared to its station power requirements, no retail sale can occur under federal standards. Riverside claims that its ability to offset its power consumption against its overwhelming power generation must be taken into account when being billed for service under PJM tariff protocol. We disagree.

Section 201(b) of the Federal Power Act grants the FERC jurisdiction over the "transmission of electric energy in interstate commerce" and the "sale of electric energy at wholesale in interstate commerce" as well as "all facilities for

such transmission or sale[.]" 16 U.S.C.[2] § 824(b)(1). States retain jurisdiction over "any other sale of electric energy" and "facilities used in local distribution" of electricity. *Id.* The disagreement between Kentucky Power and Riverside is a straightforward rate dispute regarding the interpretation and application of retail rates approved pursuant to the laws of the Commonwealth of Kentucky. Riverside points to nothing in PJM's tariff protocol or in FERC's accepted standards which would prevent Kentucky Power from charging Riverside retail rates for the retail service that it provides to its customer pursuant to tariffs expressly approved by the Commission. Where a generating facility is not online and producing electricity to supply its station power needs, it is consuming electricity just like any other customer. Consequently, Kentucky Power's provision of station power is an ordinary retail sale subject to the Commonwealth's jurisdiction and not to FERC standards or PJM's tariff protocol. *See Calphine v. F.E.R.C.*, 702 F.3d 41, 47 (D.C. Cir. 2012) (noting that the FERC has specifically held that it lacks jurisdiction over third-party provision of station power because where station power is acquired in this manner it is not being sold for wholesale purposes).

Finally, Riverside argues that the Commission erred by "sanctioning an unreasonably prejudicial rate." It contends that the application of Tariff IGS rates to its consumption of station power energy is unfair because this rate causes it

---

[2] United States Code.

to subsidize the capital costs and maintenance expenses of Kentucky Power's large industrial customers. However, the rate charged to Riverside under Tariff IGS is not unfairly prejudicial.

KRS 278.170(1) proscribes unreasonable discrimination by prohibiting utilities from granting an "unreasonable preference or advantage" or maintaining an "unreasonable difference" between classes of service "for doing a like and contemporaneous service under the same or substantially the same conditions." The retail rate billed to Riverside by Kentucky Power is the same rate billed to its similarly situated industrial and commercial customers and reflects the costs of providing services -- including power generation and transmission. Consequently, it cannot be said that Kentucky Power is unreasonably discriminating against Riverside. The Commission's order cannot be set aside on this basis.

We AFFIRM the well reasoned opinion and order of the Franklin Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Mark David Goss
David S. Samford
L. Allyson Honaker
Lexington, Kentucky

BRIEF FOR APPELLEE PUBLIC
SERVICE COMMISSION OF
KENTUCKY:

Quang Nguyen
Cornelius J. Mance
Frankfort, Kentucky

BRIEF FOR APPELLEE
KENTUCKY POWER COMPANY:

Mark R. Overstreet
Katie M. Glass
Frankfort, Kentucky